PEOPLE v DUNGEY

Docket No. 76956. Submitted February 14, 1985, at Grand Rapids.—
Decided September 10, 1985.

Philip M. Dungey was convicted on his plea of nolo contendere in
Cass Circuit Court, Meyer Warshawsky, J., of attempted crimi-
nal sexual conduct in the fourth degree. Prior to offering his
plea, the defendant moved to dismiss on the basis that the
prosecution's delay in bringing proceedings against him had
precluded laboratory comparisons of his bodily fluids with those
taken from the victim immediately after the assault which
might have served to exclude defendant as a possible suspect.
The trial court denied the motion on the basis of expert
testimony that such tests might still be conducted. Such tests
were conducted, but it was determined that no valid compari-
son could be made because of the age of the original samples
taken shortly after the assault. Defendant appealed. *Held:*

The record clearly demonstrates that the prosecution's delay
in proceeding against defendant, a delay attributable to noth-
ing more than the caseload of the prosecution's staff, seriously
prejudiced defendant by reindering it impossible to secure
laboratory evidence which might have excluded defendant from
the class of suspects for this crime. While one can sympathize
with the prosecution's having to labor under heavy caseloads,
defendant is entitled to dismissal of the charges because the
delay resulted in inexcusable prejudice.

Reversed.

1. CRIMINAL LAW — DUE PROCESS — SPEEDY TRIAL.

Where there has been a delay between an alleged criminal
transaction and the arrest of a defendant and where the
defendant has shown some prejudice as a result of the delay,
the prosecutor bears the burden of persuading the court that
the reason for the delay is sufficient to justify whatever preju-

REFERENCES

Am Jur 2d, Criminal Law §§ 849 *et seq.*

Admissibility, weight, and sufficiency of blood-grouping tests in
criminal cases. 2 ALR4th 500.

See also the annotations in the ALR3d/4th Quick Index under
Speedy Trial.

dice resulted; the burden of coming forward with evidence of prejudice is on the defendant, who is most likely to have facts regarding prejudice at his disposal; the burden of persuasion rests with the state, which is most likely to have access to facts concerning the reasons for delay and which bears the responsibility for determining when an investigation should end.

2. CRIMINAL LAW — SPEEDY TRIAL — BLOOD SAMPLE TESTING — PREJUDICIAL DELAY.

An unexplained lengthy delay in proceeding against a defendant on a criminal sexual conduct charge and in submitting the victim's and the defendant's blood and saliva samples for laboratory comparison with samples taken shortly after the assault results in prejudice requiring reversal where the delay makes it impossible to make comparison tests with the original samples and thereby possibly exclude the defendant from the class of those who could have committed the assault.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Susan L. Dobrich,* Prosecuting Attorney, and *Jann Ryan Baugh,* Assistant Attorney General, for the people.

State Appellate Defender (by *Sheila N. Robertson* and *Fred Bell),* for defendant on appeal.

Before: GRIBBS, P.J., and MACKENZIE and J. B. SULLIVAN,* JJ.

PER CURIAM. On February 14, 1983, defendant pled nolo contendere to attempted fourth-degree criminal sexual conduct, MCL 750.92; MSA 28.287, MCL 750.520e; MSA 28.788(5). He was sentenced to one year in the county jail, and he appeals as of right. We reverse.

According to complainant's preliminary examination testimony, in the early morning of May 11, 1981, defendant knocked on her door and gave a false name. He eventually forced his way into the home by breaking the door panel. Defendant dis-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

played a handgun and forced complainant to have vaginal and oral sex with him. Complainant identified defendant as her assailant and stated that she had previously been acquainted with him.

The alleged assault occurred on May 11, 1981. A warrant was issued and defendant was arrested on December 4, 1981. Defendant moved on October 26, 1982, to dismiss the complaint on the ground that prejudice resulted from the delay between the date of the offense and the date of arrest. He alleged, in part, that the delay resulted in the loss of potentially exculpatory blood typing evidence. The trial court denied the motion to dismiss, finding that the prosecution had carried its burden of persuading the court that the reason for the delay was sufficient to justify whatever prejudice resulted. See *People v Bisard,* 114 Mich App 784; 319 NW2d 670 (1982).

The Court in *Bisard, supra,* p. 791, stated the appropriate standard for determining whether the delay in proceedings entitles a defendant to relief:

"Accordingly, we hold that, once a defendant has shown some prejudice, the prosectuion bears the burden of persuading the court that the reason for the delay is sufficient to justify whatever prejudice resulted. This approach places the burden of coming forward with evidence of prejudice on the defendant, who is most likely to have facts regarding prejudice at his disposal. The burden of persuasion rests with the state, which is most likely to have access to facts concerning the reasons for delay and which bears the responsibility for detemining when an investigation should end."

Complainant underwent a physical examination shortly after the alleged rape, and a sexual assault evidence kit was assembled and forwarded to the State Police Crime Laboratory for testing. Among the items of evidence received by the crime lab on

May 13, 1981, were vaginal and oral swabs, vaginal and oral smears and the underpants which complainant was wearing at the time of the assault. According to the lab report dated June 10, 1981, chemical testing of the vaginal swab indicated the presence of seminal stains. In addition, microscopic examination of the vaginal smear showed the presence of many spermatozoa. Finally, chemical tests and microscopic examinations showed the presence of seminal stains and spermatozoa in the crotch area of the underpants. The crime lab declined to do any secretion typing studies until known blood and saliva samples from the complainant and the defendant were submitted for comparative analyses. The lab report dated June 10, 1981, stated:

"A known blood and saliva sample from each of the parties believed to be involved in this case must be obtained before any secretion typing studies will be conducted. The length of time that elapses before these samples are obtained is crucial to the success of such typing. The evidence will be retained for 30 days awaiting these samples. After 30 days the evidence will be returned to your department without secretion typing studies."

The evidence was in fact returned without secretion typing studies.

At the January 7, 1983, hearing on the motion to dismiss, Glen Moore, the crime lab scientist who handled this case, testified that, as a matter of department policy, secretion typing studies are not performed on specimens taken from a sexual assault victim unless known blood and saliva samples from the complainant and the suspect are submitted for comparative analyses. The witness further testified that, when known blood and saliva samples are submitted, chemical testing of

seminal fluid or other body fluids obtained from the victim's body can reveal the blood type of the person who deposited the particular body fluid involved. The blood type can then be compared to the known samples so that a suspect may be either included or excluded from the class of possible sources of the particular body fluid involved. Mr. Moore stated that successful secretion typing tests may be performed up to one year after the specimens are collected, although such tests are sometimes performed beyond that period. The witness further stated that, given the required known blood and saliva samples, the evidence in question could still be tested for secretion typing.

In its opinion denying the motion to dismiss, the trial court relied on this testimony in finding that defendant had not suffered substantial prejudice. The court stated:

"After examination of Glen Moore, a Laboratory Scientist qualified as an expert for the purpose of this hearing, it was discovered that blood, saliva and seminal secretion studies could in fact have been performed earlier and could still be conducted. The Court finds this information to be important for the following reasons: (1) defendant may now request such tests be performed and thereby potentially receive exculpatory results and, (2) no further prejudice can be alledged by defendant should he not request that such tests be performed."

Following the hearing, the sexual assault evidence kit was resubmitted to the laboratory along with the required known blood and saliva samples. Unfortunately, the lab report dated February 9, 1983, indicates that:

"Secretion typing studies on the vaginal swabs, victim's underpants, and oral swabs were inconclusive due

to the length of time which has passed resulting in the loss of activity of the blood grouping substances."

Therefore, despite the trial court's finding, the subsequent scientific testing indicates that the delay caused by the prosecution resulted in the ' loss of secretion typing evidence which potentially could have exculpated defendant. Accordingly, we find that defendant has clearly carried his burden under *Bisard* by coming forward with substantial evidence of prejudice resulting from the delay in the proceedings caused by the prosecution.

According to the hearing testimony, the delay in these proceedings and the failure timely to submit the known blood and saliva samples to the crime lab was essentially the result of the heavy caseload of the prosecution's staff. This explanation, however, does not excuse the delay and neglect in this case.

The secretion typing tests could not prove that defendant was guilty of the act, but offered the possibility of excluding him from the class of suspects. The prosecutorial delay and neglect made it impossible to obtain the potentially exculpatory evidence, and therefore the prejudice to defendant is clear. We find that the prosecution did not carry its burden of showing a reasonable explanation for the delay sufficient to justify the substantial prejudice. *Bisard, supra.*

We sympathize with prosecutors who are laboring under heavy caseloads; however, cases of such a serious nature as the present one demand immediate attention. Failure to give such attention in this matter resulted in inexcusable prejudice, such that defendant was entitled to dimissal.

Reversed.