PEOPLE v ADAMS

PEOPLE v DESAI

Docket Nos. 202665, 202666. Submitted June 17, 1998, at Detroit. Decided
    October 9, 1998, at 9:05 A.M. Leave to appeal sought.

    Following separate preliminary examinations, Stephan C. Adams and
        Jashubai K. Desai were bound over to, and their cases were consol-
        idated for trial in, the Detroit Recorder's Court on charges of first-
        degree murder, conspiracy to commit first-degree murder, and
        solicitation of first-degree murder. On the basis of stipulated facts
        indicating that certain witnesses are dead or unavailable and that
        certain physical evidence is lost or missing, the defendants each
        moved for dismissal of the charges, claiming that prearrest delay of
        twelve years was prejudicial to their right to a fair trial. The court,
        Karen Fort Hood, J., granted the motions. The prosecution
        appealed.

    The Court of Appeals held:

    1. The trial court abused its discretion in granting the defendants'
    motions to dismiss. A claim of prejudicial prearrest delay is evalu-
    ated under a two-part test. First, the defendant must demonstrate
    actual and substantial prejudice to the right to a fair trial. Second,
    if actual and substantial prejudice is shown, the prosecution must
    persuade the trial court that the reason for the delay is sufficient to
    justify whatever prejudice resulted. Prejudice must not be merely
    speculative and must meaningfully impair the defendant's ability to
    defend against the charge. The death of a witness, by itself, is
    insufficient to establish actual and substantial prejudice. In this
    case, the defendants have not demonstrated the requisite actual
    and substantial prejudice to shift the burden of persuasion to the
    prosecution to show the reasonableness of the delay. The defend-
    ants have made no showing that any of the unavailable witnesses
    would have provided exculpatory testimony or relevant information
    beneficial to their defense. The defendants have not substantiated
    the potentially exculpatory aspects of the missing physical
    evidence.

    2. Even if actual and substantial prejudice were assumed, the
    trial court clearly erred in finding that the prosecution's proffered

reasons for the delay did not justify the resultant prejudice. The trial court clearly erred in finding that the prosecution, as a tactic, deliberately waited for an anticipated change in the law allowing the admission of Adams' confession to witness Lawrence Gorski that he had killed the victim at the request of Desai not only in the case against Adams, but also in the case against Desai. The record indicates that the delay in prosecution was prompted by investigative concerns rather than tactical concerns.

Reversed and remanded for further proceedings.

CRIMINAL LAW — PREARREST DELAY — RIGHT TO FAIR TRIAL — MOTION FOR DISMISSAL.

A defendant's claim that prearrest delay prejudiced the defendant's right to a fair trial such that a motion to dismiss the charge should be granted is evaluated under a two-part test: first, the defendant must demonstrate actual and substantial prejudice to the right to a fair trial and, second, if actual and substantial prejudice is shown, the prosecution must persuade the trial court that the reason for the delay is sufficient to justify whatever prejudice resulted; prejudice must not be merely speculative and must meaningfully impair the defendant's ability to defend against the charge; delay caused by the need for further investigation justifies resultant prejudice, while delay for tactical advantage over the defendant does not.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Roberta L. Wolfe-Bryant*, Assistant Prosecuting Attorney, for the people.

*James L. Feinberg* (*Stuart G. Friedman*, of Counsel), for Stephen C. Adams.

*Williams, Williams, Ruby & Plunkett, P.C.* (by *Thomas G. Plunkett*) and *Stringari, Fritz, Kreger, Ahearn & Crandall, P.C.* (by *Martin E. Crandall*), for Jashubai K. Desai.

Before: GRIFFIN, P.J., and GRIBBS and TALBOT, JJ.

GRIFFIN, P.J. In these consolidated appeals, the people appeal as of right an order of the Recorder's Court granting defendants' motions to dismiss charges of first-degree murder, MCL 750.316; MSA 28.548, conspiracy to commit first-degree murder, MCL 750.157a; MSA 28.354(1), and solicitation of first-degree murder, MCL 750.157b; MSA 28.354(2). We reverse and remand.

I

Defendants were charged in 1995 with the November 3, 1983, strangulation murder of Anna Marie Turetzky in Woodhaven, Michigan. Turetzky, defendant Desai's business partner in the operation of a medical clinic, was found dead in her automobile parked behind a local motel. Desai had allegedly solicited defendant Adams to commit the murder. Following separate preliminary examinations, defendants were bound over and their cases consolidated for trial. Pertinent to this appeal, both defendants moved to dismiss the charges on the basis of prearrest delay, arguing that the prosecution's twelve-year delay in filing charges caused a loss of evidence prejudicial to defendants' right to a fair trial. In support of their motions, defendants relied on a stipulation of facts regarding unavailable witnesses and lost evidence.

According to the stipulation, the following witnesses are now deceased or otherwise unavailable: Philip Hatcher, an insurance agent who arranged life insurance policies making Desai and Turetzky beneficiaries upon the death of the other; Jintendra Surti, bookkeeper for Desai and Turetzky, who was the custodian of the clinic's banking records; Thomas

McCrary, who negotiated a clinic check for $2,018 to Adams, characterized by the prosecution as the "pay-off" for the homicide; Woodhaven Police Sgt. James Johnson, the preliminary investigator of the murder; Peter Slywka, Turetzky's father, who made reward offers for the discovery of the perpetrator; Dr. Ruth Higgins, a psychiatrist who was familiar with McCrary's psychiatric problems; Dr. Gregory Kaufman, who performed the autopsy on Turetzky; and Frank Raines, an associate of key witness Lawrence Gorski.

Certain physical evidence was also stipulated by the parties to be missing: tape recordings of conversations between various individuals, including defendants and an individual named Rick Lobdell, which were turned over to the police;[1] an "Anarchist's Cookbook"[2] once possessed by Adams; the contents of Adams' wallet, duffel bag, and automobile, taken from his possession following an alleged extortion attempt and beating in 1984; and, finally, a piece of tissue paper allegedly found by Turetzky family members in the victim's automobile after her murder and after a search of the car by the police.[3]

Both defendants filed motions to dismiss in the trial court, arguing that all of the missing witnesses and physical evidence were potentially exculpatory

---

[1] These tapes were made in the approximate time frame of January through April 1984, allegedly in an attempt to exact a confession from Adams and extort money from Desai.

[2] This book purportedly contained underlined passages regarding strangulation techniques.

[3] According to the preliminary examination testimony of the victim's children, the initials "S A" (defendant Adams' initials) were written on this piece of tissue paper, which was turned over to the police.

and that the twelve-year delay in filing charges prejudiced their rights to a fair trial. Following an evidentiary hearing, the trial court ruled that defendants were irreparably prejudiced and unable to present a defense given the loss of testimonial and physical evidence. The trial court further found that the prosecution intentionally delayed the investigation in order to gain a tactical advantage over defendants by waiting for an anticipated change in the law that would permit the admission of Adams' inculpatory hearsay statement against Desai. The trial court granted defendants' motions to dismiss, concluding that the prosecution's reasons for delay did not justify the undue prejudice to defendants.

II

On appeal, the prosecution argues that the trial court erred in dismissing the charges against defendants. This Court reviews a trial court's ruling regarding a motion to dismiss for an abuse of discretion. *People v McCartney*, 72 Mich App 580, 589; 250 NW2d 135 (1976). Upon review, we agree with the prosecution that, under the present circumstances, the trial court abused its discretion in granting defendants' motions to dismiss.

In *People v Bisard*, 114 Mich App 784; 319 NW2d 670 (1982), this Court reevaluated the tripartite test of prejudicial delay originally set forth in *People v Hernandez*, 15 Mich App 141; 170 NW2d 851 (1968),[4]

---

[4] Pursuant to the *Hernandez* test, once a defendant demonstrated that some prejudice had occurred as a result of the delay, it was incumbent on the prosecution to show (1) an explanation for the delay, (2) that the delay was not deliberate, and (3) that no undue prejudice attached to the defendant. *Hernandez, supra* at 147. If the prosecution failed to establish

in light of post-*Hernandez* developments in due process jurisprudence. The *Bisard* Court, *supra* at 788, noted:

> Two United States Supreme Court cases decided after 1968 have addressed the problem of preindictment or prearrest delay. In *United States v Marion*, 404 US 307; 92 S Ct 455; 30 L Ed 2d 468 (1971), the Court recognized that the Due Process Clause afforded only "limited" protection to those persons who have not been arrested but observed that such persons' primary protection was in the applicable statutes of limitation. The Court explained this decision further in *United States v Lovasco*, 431 US 783; 97 S Ct 2044; 52 L Ed 2d 752 (1977), when it established a two-part test to be used in the due process inquiry. First, the Court observed that "proof of prejudice is generally a necessary but not sufficient element of a due process claim." 431 US 783, 790. Second, the Court held that, in addition to the consideration of prejudice, a court was to explore the reason for the delay.[5]

Adopting this two-part test, the *Bisard* Court rejected an interpretation of *Lovasco* that would place

---

any of the three prongs of the test, a due process violation was established.

[5] The *Lovasco* Court, *supra* at 790-791, reasoned:

It requires no extended argument to establish that prosecutors do not deviate from "fundamental conceptions of justice" when they defer seeking indictments until they have probable cause to believe an accused is guilty; indeed, it is unprofessional conduct for a prosecutor to recommend an indictment on less than probable cause. It should be equally obvious that prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt. To impose such a duty "would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself," *United States v Ewell*, *supra* [383 US 116, 120; 86 S Ct 773; 15 L Ed 2d 627 (1966)].

an "extremely heavy burden" on a defendant by requiring that the defendant prove both actual prejudice and unexplainable delay. *Id.* at 789. Instead, the Court construed *Lovasco* in the following manner:

> [W]e hold that, once a defendant has shown some prejudice, the prosecution bears the burden of persuading the court that the reason for the delay is sufficient to justify whatever prejudice resulted. This approach places the burden of coming forward with evidence of prejudice on the defendant, who is most likely to have facts regarding prejudice at his disposal. The burden of persuasion rests with the state, which is most likely to have access to facts concerning the reasons for delay and which bears the responsibility for determining when an investigation should end. [*Id.* at 791.]

See also *People v Reddish*, 181 Mich App 625, 627; 450 NW2d 16 (1989); *People v Loyer*, 169 Mich App 105, 118-119; 425 NW2d 714 (1988); *People v Shelson*, 150 Mich App 718, 726; 389 NW2d 159 (1986); *People v Dungey*, 147 Mich App 83, 85; 383 NW2d 128 (1985); *People v Vargo*, 139 Mich App 573, 579; 362 NW2d 840 (1984); *People v Evans*, 128 Mich App 311, 314; 340 NW2d 291 (1983).

Pursuant to the requisite two-part inquiry, a defendant must initially demonstrate "actual and substantial" prejudice to his right to a fair trial. *Bisard, supra* at 790; *People v White*, 208 Mich App 126, 134; 527 NW2d 34 (1994);[6] *Dungey, supra* at 88. Accord, *Marion, supra* at 325; *United States v Rogers*, 118 F3d 466, 474 (CA 6, 1997); *United States v Brown*, 959 F2d 63,

---

[6] Judge GRIFFIN acknowledges that the test for prearrest delay articulated and applied in the instant case is more precise than the standard that he recited in *White, supra* at 134-135.

66 (CA 6, 1992); *United States v Lash*, 937 F2d 1077, 1088 (CA 6, 1991). In this context, as one federal court has explained, a defendant must show not only "actual prejudice, as opposed to mere speculative prejudice . . . but also that he show that any actual prejudice was substantial—that he was meaningfully impaired of his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was likely affected." *Jones v Angelone*, 94 F3d 900, 907 (CA 4, 1996). See also *Rogers, supra* at 476. This Court has reiterated that proof of "actual and substantial" prejudice requires more than generalized allegations:

> A defendant shoulders the burden of coming forward with evidence of prejudice. Until he does so, the prosecution's burden—to persuade the court that the delay was justified in the face of any resulting prejudice—is not triggered. The imperfection of a witness' memory may be exposed to the trier of fact during direct or cross-examination and may be emphasized to buttress or undermine credibility. If such absence of memory by a defendant's material witness due to a lengthy prearrest delay seriously impedes or significantly hinders a defendant in presenting his case, prejudice, of course, would be shown, and the prosecution would be required to demonstrate how that prejudice was justified by the prearrest delay. In this case, however, no such impediment or hindrance was manifest. Moreover, we decline to accept defendant's assertion on appeal that "the exceptionally long delay in the present case should itself raise a strong inference of prejudice." Without specific references to instances of prejudice-generating occurrences, and without specific allegations of actual prejudice resulting therefrom, the prosecution would be at an insuperable disadvantage indeed in attempting to show how such unspecified prejudice was in fact justified. We

will not put the cart before the horse. [*Loyer, supra* at 120].[7]

Although the Michigan courts have not had occasion to address the effect of the death of a material witness during an interval of prearrest delay on the continued prosecution of a case, the federal courts have consistently held, in the present context, that the death of a witness alone is insufficient to establish actual and substantial prejudice:

> The death of a potential witness during the preindictment period may demonstrate the requisite prejudice if the defendant can demonstrate that exculpatory evidence was lost and could not be obtained through other means. . . . However, a defendant does not show actual prejudice based on the death of a potential witness if he has not given an indication of what the witness's testimony would have been and whether the substance of the testimony was otherwise available.
>
> Even where a defendant specifies what a deceased witness's testimony would have been, actual prejudice is difficult to prove. [*Rogers, supra* at 475.]

See also *Lovasco, supra* at 785-786; *United States v Benshop*, 138 F3d 1229, 1232-1234 (CA 8, 1998); *United States v Beszborn*, 21 F3d 62, 66 (CA 5, 1994); *United States v Valona*, 834 F2d 1334, 1338 (CA 7, 1987); *Stoner v Graddick*, 751 F2d 1535, 1544 (CA 11,

---

[7] Delays spanning many years have been held by courts in other jurisdictions not to be presumptively prejudicial. See, e.g., *United States v Pardue*, 134 F3d 1316 (CA 7, 1998) (ten-year delay); *McDougal, supra* (nine-year delay); *United States v Mmahat*, 106 F3d 89 (CA 5, 1997) (nine-year delay); *Jones, supra* (ten-year delay); *United States v Crouch*, 84 F3d 1497 (CA 5, 1996) (seven-year delay); *Wilson v McCaughtry*, 994 F2d 1228 (CA 7, 1993) (sixteen-year delay); *Stoner, supra* (nineteen-year delay).

1985);  *United States v Corbin*, 734 F2d 643, 648 (CA 11, 1984).

In the instant case, we conclude that defendants have not demonstrated the requisite actual and substantial prejudice necessary to satisfy the first prong of the *Bisard* test to thereby shift the burden of persuasion to the prosecution to show the reasonableness of the delay. Defendants have made no showing that any of these witnesses would have provided relevant information beneficial to their defense. Although defendants contend in general terms that they have been deprived of the opportunity to cross-examine the unavailable witnesses, defendants have neither specified the substance of that cross-examination testimony nor offered anything more than mere speculation concerning the exculpatory nature of such testimony. Indeed, if any party has been detrimentally affected by the unavailability of these witnesses, it is the prosecution, not defendants. The unavailable individuals were prosecution witnesses who, it is reasonable to surmise, would have provided information valuable to the prosecution. Consequently, the prosecution must move forward without the benefit of this testimonial evidence.[8]

Defendants have likewise failed to show actual and substantial prejudice by reason of the missing physical evidence. Defendants contend that the loss of the physical evidence has denied them the opportunity to

---

[8] The issue of undue prearrest delay does not entail consideration of the strength of the prosecution's case, but rather prejudice to the defense. In this regard, we note that defendants filed motions to quash in the trial court. In light of its order dismissing the cases on the basis of prejudicial prearrest delay, the trial court did not address the merits of defendants' motions to quash.

conduct testing, such as fingerprint analysis, to deter-
mine whether the evidence may have been exculpa-
tory. However, this argument, too, rests upon specula-
tion. Defendants have not substantiated the poten-
tially exculpatory aspects of this physical evidence,
for instance, by delving into the substance of the
missing tape-recorded conversations or explaining
how the loss of the tissue paper and Anarchist's
Cookbook, incriminatory in nature, prejudiced their
defense.[9] In fact, testimony adduced during the evi-
dentiary hearing held below indicated that the miss-
ing evidence was the prosecution's loss and defend-
ants' gain, given that the *prosecution's* case rested in
large part on this lost evidence. Defendants' vague
claims of prejudice therefore fall short of the requi-
site proof.[10] We conclude the trial court abused its

---

[9] Defendants' reliance on *People v Dungey*, 147 Mich App 83; 383 NW2d
128 (1985), is misplaced. In *Dungey*, the defendant was not charged with
criminal sexual assault until seven months after the alleged assault
occurred. Immediately after the offense, the victim underwent a physical
examination, which provided secretion evidence. During the intervening
delay, the evidence lost its identifying properties, thus preventing the
defendant from conducting tests on the evidence. The *Dungey* Court,
*supra* at 88, ruled:

> The secretion typing tests could not prove that defendant was
> guilty of the act, but offered the possibility of excluding him from
> the class of suspects. The prosecutorial delay and neglect made it
> impossible to obtain the potentially exculpatory evidence, and
> therefore the prejudice to defendant is clear.

The defendant in *Dungey* amply demonstrated that the physical proper-
ties of the missing evidence could have potentially excluded him as a sus-
pect. The missing evidence in the instant case is potentially inculpatory,
and defendants have not otherwise specified how these items may have
exculpated them or meaningfully impaired the defense by their loss.

[10] Moreover, this Court has held, albeit in a different but nonetheless
pertinent context, that a loss of physical evidence that occurs before a
defense request for its production does not require reversal absent the
intentional suppression of evidence or a showing of bad faith. *People v*

discretion in granting defendants' motions to dismiss on the basis of prejudicial prearrest delay. *McCartney, supra*. Defendants' claims of prejudice are too indefinite and speculative to satisfy the threshold requirement of *Bisard, supra*, that "actual and substantial" prejudice be shown before the burden of persuasion shifts to the prosecution to justify the delay. Defendants have not carried their burden.

III

Next, even if we were to assume the existence of actual and substantial prejudice to defendants, we nonetheless conclude that the trial court clearly erred in finding that the prosecution's proffered reasons for the delay did not justify the resultant prejudice.

In the present case, an important piece of evidence for the prosecution is the alleged statement made by Adams to witness Lawrence Gorski, in which Adams confessed to killing Turetzky at the request of Desai. Before the Michigan Supreme Court's decision in *People v Poole*, 444 Mich 151; 506 NW2d 505 (1993), this alleged statement could be introduced into evidence only against Adams. However, the *Poole* decision may now provide authority for the use of Adams' statement against Desai as well. The *Poole* Court held, pursuant to MRE 804(b)(3), that a declarant's inculpation of an accomplice, made in the context of a narra-

---

*Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992); *People v Albert*, 89 Mich App 350, 352-353; 280 NW2d 523 (1979). Defendants have not shown from the testimony generated during the evidentiary hearing that the police or the prosecution acted in bad faith or intentionally suppressed or destroyed the missing evidence. On the contrary, one of the original investigating officers, Sergeant James Osborn, expressly disavowed any intentional destruction of evidence.

tive of events at the declarant's initiative without prompting or inquiry, and clearly against penal interest, is admissible as substantive evidence at trial. The trial court in the instant case found that the prosecution deliberately waited for this anticipated change in the law before filing criminal charges against the defendants:

> [T]he prosecutor's office contends that the delay in prosecution of this case was due to the ongoing investigation. This is a legitimate reason for a delay. . . .
>
> However, a change in the law occurred permitting them to use Adams' alleged statement against Desai as well as himself. The tactical advantage of trying both defendants together came as a result of waiting for the *Poole* decision, rather than the discovery of new evidence from an investigation. Thus, this Court finds that the prosecutor intended to wait for an anticipated change in the law, that was tactically advantageous to them in the prosecution of this case, under the guise of conducting an ongoing investigation.

We respectfully disagree and hold that this finding is clearly erroneous.

In *Lovasco, supra* at 795-796, the United States Supreme Court opined that an investigative, as opposed to tactical, delay does not violate the Due Process Clause of the Fifth Amendment:

> In our view, investigative delay is fundamentally unlike delay undertaken by the Government solely "to gain tactical advantage over the accused," *United States v Marion*, 404 US at 324 [92 S Ct 465; 30 L Ed 2d 468 (1971)] precisely because investigative delay is not so one-sided. Rather than deviating from elementary standards of "fair play and decency," a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt

beyond a reasonable doubt. Penalizing prosecutors who defer action for these reasons would subordinate the goal of "orderly expedition" to that of "mere speed," *Smith v United States*, 360 US 1, 10; 79 S Ct 991, 997; 3 L Ed 2d 1041 (1959). This the Due Process Clause does not require. We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time.

See also *Bisard, supra* at 790-791; *White, supra* at 134; *Brown, supra* at 66.

Our review of the record reveals that several factors were involved in the decision not to prosecute sooner. The testimony of then-assistant prosecutor Nancy Alberts, when read in context, is particularly telling in this regard. She testified that the *Poole* hearsay problem was but one factor in the decision not to prosecute.[11]

---

[11]   *Q. (Defense Counsel)* You earlier testified I think, and correct me if I'm wrong, that you made a decision not to prosecute at a particular time based upon the state of the law at that time regarding this penal interest exception to the hearsay rule?

*A. (Alberts)* That was as to Dr. Desai, yes.

*Q.* Okay.

*A.* There were other considerations. That was one of them.

*Q.* What were the other considerations?

*A.* The quality of the evidence we had.

*Q.* All right. Is it fair to say that you weren't satisfied that there was a prosecutable case without that statement of Gorski?

*A.* That was one factor—

*Q.* Do you recall—

*A.* —as against Dr. Desai.

*Q.* Okay. Do you recall other factors?

*A.* There [was] a problem with—that the case was a circumstantial one, as I remember it, although I don't remember all of the evidence, but I remember that being one problem. And another one was the—the quality of the evidence against Mr. Adams, the quality of Mr. Gorski's testimony as—and I think that's about it. It was not

the—at that point it certainly was not—not as strong a case as I thought we could deal with.

Q. Okay. Was caseload a factor, your caseload?

A. No.

Q. Okay. In terms of Gorski, did you ever interview him yourself?

A. No.

Q. Do you recall one of the problems with Gorski being the fact that after he was interviewed, he was requested to take a polygraph and he didn't show up for the polygraph?

A. Yes.

\*    \*    \*

Q. Okay. Your decision to not prosecute based upon the state of the law regarding the penal interest exception to the hearsay rule was made before or after you received those [grand jury] transcripts?

\*    \*    \*

A. My decision to not prosecute was based on a number of factors. That decision was made after Mr. Gorski did not take the polygraph and I don't think we did anything else after that, so if that would help you with your time frame, I believe that everything was concluded after that point.

\*    \*    \*

Q. Did you at some point in time make a strategic decision or a tactical decision to not prosecute this case at a particular point in time until the law changed or became more favorable with regard to the admissibility of this conversation that had problems relating to the penal exception to the hearsay rule?

A. No.

Q. Did you ever consider that the longer that you delay in bringing or prosecuting this case, that it was going to have a detrimental effect on the ability to reconstruct facts through witnesses because memories would have been faded or evidence would have become lost?

\*    \*    \*

A. As to this particular case, I mean what I—I want to be careful here because always it's a detriment that a case is old. At the time I got the case, that was going through my mind because I got the case a number of years after the murder had occurred. But in

terms of whether or not I delayed, I had no intention of delaying it. To me it was a decision of whether or not I'm going to prosecute or not prosecute.

*     *     *

Q. As you look back on this case now, was it the ability or the wherewithal of Gorski to pass a polygraph on what he said that was pivotal in your decision whether to prosecute this case?

A. As to whether or not to prosecute the case against Steve Adams, it was very important. I don't know, I can't speculate today as to whether or not he had passed, would I have decided to prosecute, I can't tell you that, but it definitely was very important.

Q. Was there some reason that you wanted to prosecute the doctor and Mr. Adams at the same time as opposed to one before the other?

A. Well, it's always advantageous to prosecute two defendants at once but I guess that's the only—only reason, but I didn't see any way that I could do it.

Q. Is that to say that it gives you some sort—it's advantageous, it's some sort of a strategic advantage to do it that way?

A. Sure, if you have the evidence.

Q. Why is that?

A. Well, you only have to—you only have to do the case once, basically that's it I guess, and I would think a fact finder would understand more what you're getting at if you have two people.

Q. In other words, it's easier to present the jury with all of the persons that you think are involved in the same courtroom?

A. Sure.

Q. Was delaying a factor to collect evidence to give you an opportunity to bring the case against both of them together?

A. Well, you're assuming a question that I had a goal of delaying and it definitely was not—delay was definitely not—not a thing that I saw going in my favor at all. Delay usually goes against the prosecution, and I was never in favor of delay. And I don't remember anyone ever coming through my mind or ever being communicated to me that it should be delayed. We're trying to work as quickly as possible.

On cross-examination, Alberts reiterated that investigative concerns motivated her decision not to prosecute:

Q. (The Prosecutor) If you could have, in your professional judgment, charged this case in 1988, would you?

A. Absolutely.

Q. Why didn't you?

Alberts' testimony clearly underscores that investigative rather than tactical concerns governed the prosecution's course of action.[12] The investigation took many twists and turns during the years following Turetzky's murder. As noted above, key witnesses died and evidence became unavailable. In 1984, a federal grand jury convened to investigate an unrelated matter involving defendant Desai, and more evidence was allegedly garnered pertaining to this investigation. Adams and the key witness, Gorski, disappeared and were eventually located outside Michigan. Gorski failed to appear for a polygraph examination, and

---

A. I didn't think I could get past a preliminary examination.

Q. Did it concern you that on the one hand you had information, however accurate it was, that Mr. Adams had passed a polygraph?

A. Yes.

Q. Did that influence your decision on whether to proceed at all?

A. Yes.

Q. Why?

A. Because he may have been telling the truth. Frankly, from my looking at the other evidence, I really doubted the results of the polygraph, but that is powerful evidence and assuming that it was—that it was correct, I found it to be pretty strong evidence for the defense.

Q. And did—

A. A big hurdle.

Q. Were you concerned about perhaps charging an innocent man?

A. Of course.

Q. And did that weigh on your decision?

A. Sure.

Q. To your knowledge, in the time you were in the unit, was there ever a grand jury impaneled to deal with a specific case?

A. I don't think so.

Q. Did you delay this prosecution to hurt the defense?

A. I didn't delay the prosecution at all. I denied the prosecution.

[12] David Hesburn and James Osborn, two of the police officers involved in the investigation during the twelve-year period, also testified during the evidentiary hearing that the investigation was never delayed to gain a tactical advantage.

Adams, who did take a polygraph, appeared to have "passed" the examination. Finally, in 1994, a one-man grand jury was appointed to investigate unsolved murders in the city of Detroit, including the murder in this case. Both defendants were subpoenaed to appear before the grand juror and, on the basis of the cumulative evidence gathered from this investigation and the intervening years of investigation, defendants were finally charged with crimes arising out of the death of Turetzky. On the record, we find no deliberate tactical delay by the prosecution and hold that the trial court clearly erred in its finding to the contrary.[13]

For these reasons, we reverse the decision of the trial court and remand these cases for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[13] We further reject the underlying premise advanced by defendants and accepted by the trial court that the Wayne County Prosecutor is capable of predicting Supreme Court decisions years in advance of their issuance. Such clairvoyance would be most extraordinary.