# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JUNELL DESHAWN MOBLEY,

        Defendant-Appellant.

UNPUBLISHED
January 27, 2015

No. 317482
Baraga Circuit Court
LC No. 2012-001282-FH

Before: MURPHY, P.J., and METER and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of prisoner in possession of a weapon, MCL 800.283(4). Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 30 months to 10 years' imprisonment. We affirm.

Defendant argues both in his principal brief on appeal and in a Standard 4 brief that the delay in charging him violated his right to due process and that his right to a speedy trial was violated. We disagree. This Court reviews de novo whether a delay in charging a defendant violated his right to due process. *People v Reid (On Remand)*, 292 Mich App 508, 511; 810 NW2d 391 (2011). "The determination whether a defendant was denied a speedy trial is a mixed question of fact and law. The factual findings are reviewed for clear error, while the constitutional issue is a question of law subject to review de novo." *People v Waclawski*, 286 Mich App 634, 664; 780 NW2d 321 (2009) (citations omitted).

Defendant contends that he was prejudiced by the seven and one-half month delay between the alleged commission of the offense and the bringing of charges and that, therefore, his due process rights were violated.

> Mere delay between the time of the commission of an offense and arrest is not a denial of due process. There is no constitutional right to be arrested. Rather, the guideline is whether the record presents evidence of prejudice resulting from the delay which violates a defendant's right to procedural due process. [*People v Patton*, 285 Mich App 229, 236; 775 NW2d 610 (2009) (citations and quotation marks omitted).]

Dismissal is not required unless (1) the prearrest delay actually and substantially prejudiced the defendant's right to a fair trial and (2) the prosecutor intended to gain a tactical advantage. *Id*. at

-1-

237. "Substantial prejudice is that which meaningfully impairs the defendant's ability to defend against the charge in such a manner that the outcome of the proceedings was likely affected." *Id*. Generalized allegations are insufficient to establish actual and substantial prejudice. *Id*. "An unsupported statement of prejudice by defense counsel is not enough, nor are undetailed claims of loss of physical evidence, witness memory loss, or witness death." *People v Walker*, 276 Mich App 528, 546; 741 NW2d 843 (2007), vacated in part on other grounds 480 Mich 1059 (2008), overruled in part on other grounds by *People v Lown*, 488 Mich 242 (2011). "If a defendant demonstrates prejudice, the prosecution must then persuade the court that the reason for the delay sufficiently justified whatever prejudice resulted." *Patton*, 285 Mich App at 237.

Defendant has not met his burden of establishing actual and substantial prejudice. Defendant contends that he was prejudiced because Craig Smith, the Baraga Correctional Facility (BCF) Inspector who observed Michigan State Police Sergeant Thomas Rajala's interview of defendant, was no longer working at BCF at the time of trial. Defense counsel stated below that he did "not believe that the Prosecutor made attempts to subpoena [Smith]." This contention of prejudice is speculative because defendant offers no reason to believe that Smith would have provided relevant information beneficial to the defense. See *People v Adams*, 232 Mich App 128, 136-137; 591 NW2d 44 (1998) (holding that actual and substantial prejudice was not established where the defendants failed to show that missing witnesses would have provided relevant information beneficial to the defense). Further, after defense counsel argued on the first day of trial that defendant was prejudiced by Smith's absence, the prosecutor later that day stated that he was able to locate Smith. The prosecutor explained that Smith was not served with a subpoena but he was available to testify by video if defense counsel needed him for the defense case. After the prosecutor announced Smith's availability to testify by video, defense counsel conceded that the aspect of his motion to dismiss premised on Smith's absence "would lose some of it's [sic] merit. I would tend to agree with the Prosecutor's position in that regard, and I think—and I do appreciate the recess to have a moment to—I guess to have the evening now at this point to consult with my client with regard to which witnesses we do need to call and whether he is going to testify." The defense did not call Smith to testify. Accordingly, defendant's appellate contention that he was somehow prejudiced by Smith's supposed unavailability at trial is devoid of merit.

Defendant further argues that he was prejudiced because BCF surveillance video was routinely preserved for three or four months and if a warrant had been timely issued, defendant could have demanded the preservation of any video of the events surrounding the alleged strip search of him during which a weapon was found, a discovery that defendant claimed never occurred. Initially, as a factual matter, we note that although defendant asserts that the video would have been preserved for three or four months, BCF Inspector Eric Petaja testified that the maximum retention period of video was only "a couple months" unless affirmative steps were taken to preserve it. Moreover, the record is devoid of any evidence that defendant was actually and substantially prejudiced by the loss of the video. Defendant has not substantiated that there was any potentially exculpatory aspect of the video. See *Adams*, 232 Mich App at 137-138 (noting that the defendant had failed to substantiate the potentially exculpatory aspects of missing physical evidence). It is speculative to suggest that the video would have benefitted defendant by showing that he was not taken out of his cell for a visit to a psychologist at the time that a weapon was found in his pocket. Indeed, the prosecutor presented overwhelming evidence of guilt, including the testimony of two corrections officers, Andrew Hill and Douglas West, that

the weapon was recovered from defendant's pocket, and the testimony of Rajala that defendant confessed to possessing the weapon and claimed he needed it for protection from a prison gang. Defendant testified that Hill, West, and Rajala were all lying. Defendant could have sought to introduce other evidence to support his theory that the prosecution witnesses were lying, such as by calling other witnesses to testify, including Smith, who attended Rajala's interview of defendant, or the psychologist whom defendant was called out of his cell to visit when the weapon was found in his pocket. Defendant also could have sought to subpoena prison records to ascertain if he was called out for a visit to the psychologist at that time. Overall, we conclude that defendant's allegations about the video are too indefinite and speculative to establish that his ability to defend against the charge was meaningfully impaired in such a manner that the outcome of the trial was likely affected. *Patton*, 285 Mich App at 237; *Adams*, 232 Mich App at 138-139.

Because defendant failed to establish actual and substantial prejudice, the prosecution's burden to persuade the court that the delay was justified in the face of any resulting prejudice was not triggered. *Id*. at 135. Moreover, defendant has failed to present evidence establishing that that the prosecutor intended to gain a tactical advantage by delaying the bringing of charges. *Patton*, 285 Mich App at 237. Accordingly, we conclude that defendant has not made the required showing to establish that the prearrest delay violated his due process rights.

Defendant also argues that he was denied his right to a speedy trial. "[A] defendant's right to a speedy trial is guaranteed by the United States and Michigan Constitutions." *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013), citing US Const, Am VI, and Const 1963, art 1, § 20. See also MCL 768.1 (codifying the right to a speedy trial). There is no fixed number of days of delay after which the right to a speedy trial is violated. *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *Id*.

"Whether an accused's right to a speedy trial is violated depends on consideration of four factors: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Rivera*, 301 Mich App at 193 (citation and quotation marks omitted). "Following a delay of eighteen months or more, prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury." *Williams*, 475 Mich at 262. "[A] presumptively prejudicial delay triggers an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial." *Id*. (citation and quotation marks omitted).

"In assessing the reasons for delay, this Court must examine whether each period of delay is attributable to the defendant or the prosecution." *Waclawski*, 286 Mich App at 666. Delays that inhere in the court system, such as docket congestion, are technically attributable to the prosecution but are given a neutral tint and assigned only minimal weight in determining whether a speedy trial violation occurred. *Williams*, 475 Mich at 263. Delays caused by defense counsel, whether counsel is retained or assigned, are charged against the defendant. *Vermont v Brillon*, 556 US 81, 90-91; 129 S Ct 1283; 173 L Ed 2d 231 (2009).

The prosecutor authorized the complaint on February 7, 2011, and the complaint and warrant were issued on March 17, 2011. Trial took place on May 29, 2013, and May 30, 2013.

Because the delay was more than 18 months, prejudice is presumed. *Williams*, 475 Mich at 262. It is therefore necessary to inquire into the other factors to determine whether a speedy trial violation occurred. *Id*.

A summary of the procedural history of this case is required to address the reasons for delay. At defendant's arraignment on April 20, 2011, defense counsel moved for a competency evaluation, which the trial court granted. Following a forensic psychiatric evaluation, a competency hearing was held on July 22, 2011, at which the trial court found that defendant was competent to stand trial. At that hearing, defense counsel indicated that he wished to discuss a plea offer with defendant and prepare him to come back for a pretrial conference and a possible plea. The trial court therefore set the matter for a pretrial conference. Then, at an August 24, 2011, pretrial conference, at which a plea was anticipated, defendant stated that he did not know what the plea offer was and that he had told defense counsel to withdraw. At a September 21, 2011, pretrial conference, defense counsel said that he was going to file a motion to withdraw and that nothing could be accomplished at the hearing on that date. Defense counsel moved to withdraw on September 23, 2011, but the motion was not heard until December 1, 2011, at which time the court granted the motion to withdraw. Various pretrial conferences scheduled from January through June of 2012 were adjourned, including a March 30, 2012, conference that defendant's second appointed counsel asked to have adjourned because of his schedule. At a June 19, 2012, pretrial conference, defense counsel indicated he needed more time to prepare a brief regarding the defense motion to dismiss, and the prosecutor was also given time to respond. The motion to dismiss was heard on August 1, 2012. After the trial court denied the motion to dismiss, defendant requested a remand for a preliminary examination because he had made a revocable waiver of his right to a preliminary examination, the prosecutor agreed to the defense request, and the trial court granted the defense request.

The case was scheduled for a preliminary examination on September 7, 2012, but the preliminary examination was adjourned three times, once at the prosecutor's request and once because defense counsel had a scheduling conflict and needed additional time to prepare, and the preliminary examination was ultimately held on December 21, 2012, at which time defendant was bound over to circuit court. In the meantime, defendant's second court-appointed counsel moved to withdraw on October 4, 2012, because of a breakdown in the attorney-client relationship, and the motion was granted on November 2, 2012. On January 23, 2013, trial was scheduled for April 10, 2013, but on January 29, 2013, trial was rescheduled for May 29, 2013. Trial was then held on May 29 and 30, 2013.

As the above summary reflects, much of the delay in this case is attributable to defendant, including his motion for a competency determination and hearing, the breakdown in his relations with two court-appointed defense attorneys necessitating the filing of motions to withdraw by both attorneys and the assignment of new attorneys, and his request to remand the matter to the district court for a preliminary examination. Further, at least two adjournments, one of a pretrial conference and one of the preliminary examination, were at the request of defense counsel. It is true that the prosecutor also requested an adjournment of the preliminary examination once, but that appears to have accounted for only 14 days of delay, from December 7, 2012, to December 21, 2012. It appears the remaining adjournments of pretrial conferences and the preliminary examination, while technically attributable to the prosecution, are inherent to the court system and should be assigned only minimal weight. *Williams*, 475 Mich at 263.

Defendant first asserted the speedy trial right in his April 30, 2012, motion to dismiss, which was over a year into the proceedings. Moreover, and significantly, defendant has not suffered any prejudice from the delay in bringing the case to trial. A defendant may experience two types of prejudice: prejudice to his person and prejudice to the defense. *Id*. at 264. Defendant has suffered no prejudice to his person because he was legally incarcerated for an unrelated conviction during the period of delay in this case, and his sentence for his conviction in this case is to be served consecutively to the other sentence he is serving, so defendant did not lose the benefit of concurrent sentences. "Prejudice to the defense is the more serious concern, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*. (citations and quotation marks omitted). The record indicates that defendant suffered no prejudice to his defense. Indeed, defendant identifies no prejudice other than that discussed in connection with his due process claim, and as discussed, those claims of prejudice lack merit. Also, the time for judging whether the speedy trial right was violated runs from the date of arrest. *Id*. at 261. Defendant essentially concedes that the surveillance video footage was lost *before* the initiation of the charge. Therefore, the loss of the surveillance video cannot serve to establish prejudice with respect to his speedy trial claim. Moreover, as discussed, Smith was available to testify by video at trial and defendant declined to call him. After weighing the four factors, we conclude that defendant's right to a speedy trial was not violated.

In his principal brief on appeal, defendant also argues that the trial court abused its discretion in denying his motion to change venue. We disagree. A trial court's decision regarding a motion to change venue is reviewed for an abuse of discretion. *People v Jendrzejewski*, 455 Mich 495, 500; 566 NW2d 530 (1997). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008). "Moreover, this Court reviews de novo constitutional issues." *People v Fonville*, 291 Mich App 363, 376; 804 NW2d 878 (2011).

A criminal defendant has a constitutional right to be tried by an impartial jury. *People v Miller*, 482 Mich 540, 547; 759 NW2d 850 (2008), citing US Const, Am VI, and Const 1963, art 1, § 20. Jurors are presumed to be impartial until the contrary is shown. *Miller*, 482 Mich at 550. "Generally, criminal defendants must be tried in the county where the crime was committed." *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008). "An exception to the rule provides that the court may, in special circumstances where justice demands or statute provides, change venue to another county." *Jendrzejewski*, 455 Mich at 499-500 (footnote omitted). A motion to change venue should be granted where (1) community prejudice amounting to actual bias exists because extensive highly inflammatory pretrial publicity saturated the community to the extent that the entire jury pool was tainted or (2) community bias is implied because a high percentage of the venire admitted to a disqualifying bias. *Id*. at 500-501.

Defendant does not claim that there was extensive pretrial publicity in this case, and the record affords no basis for such a conclusion. Defendant contends, however, that it was unlikely the seated jurors could be impartial because seven jurors were excused for cause and a large number of prospective jurors had family or friendship connections to the BCF or knew the prosecutor. Defendant did not challenge or seek the removal of any of the jurors who were ultimately seated. Although three jurors who were not removed had relatives who worked in corrections or law enforcement, and one juror who was not removed had a sister who had

worked for the prosecutor, it is undisputed that all of the jurors who were seated indicated that they could judge the case based on the evidence. Of the 34 prospective jurors called for questioning, seven were excused for cause because they indicated they would have difficulty judging the case fairly; some of them had a family member or friend who worked in corrections or law enforcement and some of them had previously worked for or knew the prosecutor.[1] The fact that 7 out of 34 prospective jurors were excused for cause due to bias does not establish that the seated jurors, all of whom indicated they could be impartial, were presumptively prejudiced against defendant. See *id*. at 514 (holding that the excusal of 25 percent of the jury pool for lack of impartiality did not establish community prejudice that impeached the indifference of the seated jurors who displayed no animus).

Accordingly, defendant has not established that a change of venue was required. The denial of defendant's motion to change venue fell within the range of principled outcomes.

Affirmed.

/s/ William B. Murphy
/s/ Patrick M. Meter
/s/ Deborah A. Servitto

---

[1] Defense counsel peremptorily excused other prospective jurors with connections to corrections officers or the prosecutor but who indicated they could be fair.