# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEMETRI DOWDELL,

        Defendant-Appellant.

UNPUBLISHED
July 5, 2018

No. 335068
Wayne Circuit Court
LC No. 15-006696-01-FC

Before: JANSEN, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of carrying a concealed weapon (CCW), MCL 750.227; felon in possession of a firearm, MCL 750.224f; possession of a firearm during the commission of a felony (felony firearm), MCL 750.227b; and assault with a dangerous weapon (felonious assault), MCL 750.82. The trial court sentenced defendant, as a fourth habitual offender, MCL 769.12, to concurrent terms of 3 to 15 years' imprisonment for the CCW conviction, 3 to 15 years' for the felon in possession of a firearm conviction, and 3 to 15 years' for the felonious assault conviction, to be served consecutive to two years' imprisonment for the felony-firearm conviction. While defendant argues that he was denied due process, we find that defendant was afforded due process. We remand to the trial court, however, to allow defendant to expand the record to include Jason Algazzaly's affidavit, and to hold a *Ginther*[1] hearing to determine whether defendant was denied the effective assistance of counsel.

## I. FACTS

On May 8, 2015, Aaron Hughes, an employee of a Citgo gas station in Detroit, had gotten into an argument with defendant. Hughes had been working at the gas station for approximately four years, and knew defendant, who was a regular customer at the gas station. Hughes testified that on the morning of May 9, 2015, he arrived at the gas station for work and saw defendant outside the store, holding a six-seven foot long metal pole in a threatening manner. Defendant raised the pole, and Hughes believed that defendant was going to hit him with it, so Hughes punched defendant in the face and stomach allegedly in self-defense. Defendant fell back onto the ground and Hughes noticed that defendant had something that looked like a gun in his

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-1-

pocket. Defendant got up and began chasing Hughes with the pole. Hughes eventually ran to his house down the street and called the police from a neighbor's phone.

After receiving word from a friend that defendant was no longer at the gas station, Hughes returned to the gas station. He testified that as he walked up to the gas station, defendant approached him for the second time. Defendant picked up the pole again and swung it at Hughes, who ducked away from it. Defendant eventually left and Hughes went into the gas station, intending to work his normal day shift. Later in the day, defendant returned for a third time, and walked into the gas station. Hughes was standing behind the front counter, which was encased in bulletproof glass, and told defendant he was stupid. Angered, defendant approached the counter and lifted up his shirt, where, according to Hughes, he had a gun in the waistband of his pants. "Mike", Hughes's coworker, told defendant to leave, and defendant eventually did so.

Hughes called the police and, on their arrival, they reviewed a surveillance video of the gas station from that day and took a statement from Hughes. The video was not available for review at any later time, due to the fact that the video system recorded over itself every 15 days, and too much time had elapsed when Detroit police sought to recover the video. Defendant was arrested in July of 2015 and, after a jury trial, he was convicted as stated above.

## II. DUE PROCESS

On appeal, defendant first argues that he was denied due process where the police failed to retrieve a surveillance video, and where the prosecution failed to inform him of the names of res gestae witnesses. We disagree.

To preserve a due process argument on appeal, a defendant is required to raise an objection on due process grounds in the trial court. *People v Hanks*, 276 Mich App 91, 95; 740 NW2d 530 (2007). At trial, defendant did not explicitly raise a due process argument regarding the failure to preserve the surveillance video, nor did he raise a due process argument regarding the prosecution's failure to inform him regarding the names of res gestae witnesses. Thus, this issue is unpreserved. Unpreserved claims of error are reviewed for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 752-753; 597 NW2d 130 (1999). Because defendant failed to preserve this issue for appeal, this Court must review the issue using the plain error standard. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* at 763. The third aspect "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* Reversal will only be warranted where the plain error leads to "the conviction of an actually innocent defendant," or where an error affects the "fairness, integrity, or public reputation" of the judicial proceeding. *Id.* at 763-764.

Defendant first argues that he was denied due process because the police did not obtain surveillance video from the gas station where the alleged incident for which he was convicted took place. Defendant wanted to produce the surveillance video footage at trial because he believed that the material it contained would exonerate him. The police were unable to retrieve the video footage because the gas station surveillance system had already erased the video from the date that defendant fought with the victim.

"[A] loss of physical evidence that occurs before a defense request for its production does not require reversal absent the intentional suppression of evidence or a showing of bad faith." *People v Adams*, 232 Mich App 128, 138 n 10; 591 NW2d 44 (1998). "Defendant bears the burden of proving . . . in the case of failure to preserve evidence, that the police acted in bad faith." *People v Bosca*, 310 Mich App 1, 26; 871 NW2d 307 (2015). In *People v Heft*, 299 Mich App 69, 79; 829 NW2d 266 (2012), this Court stated that "[a] criminal defendant can demonstrate that the state violated his or her due process rights under the Fourteenth Amendment if the state, in bad faith, failed to preserve material evidence that might have exonerated defendant." If defendant, however, is unable to show that the police acted in bad faith, then the failure to preserve the evidence does not constitute a denial of due process. *Id.* at 79.

It is evident from the record that the police were not acting in bad faith when they failed to obtain a copy of the surveillance video. The police had no knowledge of the fact that the gas station's surveillance system periodically erased old recordings, and thus, it cannot be argued that their failure to timely obtain the surveillance video was intentional or done in bad faith. Also, Officer Lisa Johnson of the Detroit Police Department testified that police protocol did not require that she obtain the surveillance video until after she had made contact with the complaining witness. Officer Johnson was unable to immediately contact the complaining witness due to scheduling conflicts and other communication issues, and thus, the surveillance video had been lost by the time she was able to make contact and to subsequently file a request for the video. The loss of the video appears to be an unforeseeable mistake, which the police department had no control over, and thus, it does not rise to the level of "bad faith" required to show that defendant was denied due process.

Defendant also argues that he was denied due process and the right to a fair trial because the prosecution did not inform him that two gas station employees, Mike Algazzaly ("Mike") and Jason Algazzaly ("Jason"), were res gestae witnesses. A res gestae witness is defined as a witness to "some event in the continuum of the criminal transaction," whose testimony would assist the development of "a full disclosure of the facts at trial. *People v Long*, 246 Mich App 582, 585; 633 NW2d 843 (2001). Under MCL 767.40a, which governs the prosecution's duties regarding the production of witnesses, the prosecution has " 'an obligation to provide notice of known witnesses and reasonable assistance to locate witnesses on defendant's request.' " MCL 767.40a; *People v Perez*, 469 Mich 415, 418-419; 670 NW2d 655 (2003) (citation omitted). Specifically, MCL 767.40a states:

> (1) The prosecuting attorney shall attach to the filed information a list of all witnesses known to the prosecuting attorney who might be called at trial and all res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers.

> (2) The prosecuting attorney shall be under a continuing duty to disclose the names of any further res gestae witnesses as they become known.

> (3) Not less than 30 days before trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial.

(4) The prosecuting attorney may add or delete from the list of witnesses he or she intends to call at trial any time upon leave of the court and for good cause shown or by stipulation of the parties.

(5) The prosecuting attorney or investigative law enforcement agency shall provide to the defendant, or defense counsel, upon request, reasonable assistance, including investigative assistance, as may be necessary to locate and serve process upon a witness . . . . [*Perez*, 469 Mich at 418 n 4; quoting MCL 767.40a.]

"The purpose of the listing requirement is merely to notify the defendant of the witness' existence and res gestae status." *People v Gadomski*, 232 Mich App 24, 36; 592 NW2d 75 (1998) (quotation omitted).

It is undisputed that Mike and Jason Algazally were res gestae witnesses, and that the prosecution failed to list them as required by the statute. Failing to do so, however, does not necessary require reversal since "if the defendant knew of the res gestae witnesses in any event, the prosecutor's failure to list the witness would be harmless error." *People v Calhoun*, 178 Mich App 517, 523; 444 NW2d 232 (1989). In this case, it is clear that defense counsel was aware of the existence of these witnesses since he attempted to include them on his witness list, albeit only by initials and workplace. There is no evidence in the record before us that the police had the full names of these individuals. More to the point, defense counsel had sufficient information such that he could have requested investigative assistance in locating and producing these witnesses pursuant to MCL 767.40a(5), but he failed to do so. Accordingly, we conclude that the prosecution's failure to list these witnesses is harmless and that the pertinent question is whether defense counsel undertook a proper investigation, including seeking investigative assistance.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that he was denied the effective assistance of counsel where defense counsel failed to call a res gestae witness. To preserve a claim of ineffective assistance of counsel, a defendant must move for a new trial or a *Ginther* hearing in the trial court. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Defendant failed to move for a new trial or for a *Ginther* hearing in the trial court. Defendant did, however, make a motion to remand to the trial court for the purpose of a Ginther hearing with this Court. Defendant sought to expand the record on appeal in order to establish whether he had been denied the effective assistance of counsel. In support of his motion, defendant attached the affidavit of Jason Algazzaly. In his affidavit, Algazzaly swore that his brother, Mike, was present during the incident. While Jason, was not present during the incident, he reviewed the surveillance videotape of the gas station for the day of the incident in question and he averred that there was no gun visible on defendant at any time during that day. He further averred that after the incident, Hughes spoke a lot about what he wanted to do to the defendant. Algazzaly further averred that he has never seen the defendant with a gun and that defense counsel never spoke to him about the incident. A panel of this Court denied the motion to remand, without prejudice, for failure to persuade the Court of the necessity of a remand at that time. *People v Dowdell*, unpublished order of the Court of Appeals, entered July 10, 2017 9Docket No. 335068).

In order for defendant to establish a claim of ineffective assistance of counsel, he must show "that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Meeting this standard is difficult, and "defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003). Additionally, defense counsel is presumed to be effective. *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007).

The only testimony placing a gun with defendant came from Hughes. If Jason, who viewed the surveillance videotape were to testify consistent with his affidavit that he never saw a gun on defendant on the day in question, that could potentially change the outcome of the trial. In addition, Mike Algazzaly, who allegedly was present when the incident took place, could offer testimony at the *Ginther* hearing favorable to the defendant. While decisions regarding which witnesses to call are considered a matter of trial strategy, *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015), failing to call a witness is considered ineffective assistance if it deprived the defendant of a substantial defense. *Id*. "A substantial defense is one that could have affected the outcome of the trial." *Id*. Because Jason's affidavit and potential testimony, and Mike's potential testimony, may reasonably a have affected the outcome of the trial, defendant should be afforded an opportunity to expand the record before the trial court and have the trial court determine whether defendant was, in fact, denied the effective assistance of counsel.

We remand to the trial court to allow defendant to expand the record to include Jason Algazzaly's affidavit and to hold a *Ginther* hearing to determine whether defendant was denied the effective assistance of counsel. We retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro

# Court of Appeals, State of Michigan

## ORDER

People of MI v Demetri Dowdell

Docket No.  335068

LC No.  15-006696-01-FC

Kathleen Jansen
Presiding Judge

Deborah A. Servitto

Douglas B. Shapiro
Judges

The Court orders that this matter is REMANDED to the trial court for an evidentiary hearing and decision to determine whether defendant-appellant was denied the effective assistance of counsel.  *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1993).  On remand defendant shall be allowed to expand the record to include the affidavit by Jason Algazzaly.

Defendant shall file with this Court a copy of any motion and supporting brief filed in the trial court regarding this matter within 14 days after the Clerk's certification of this order.

The trial court shall hear and decide the matter within 84 days after the Clerk's certification of this order.  The trial court shall make findings of fact and a determination on the record and cause a transcript of any hearing on remand to be prepared and filed within 21 days after completion of the proceedings.

Within 21 days after entry of the trial court's order deciding the matter or 21 days after the transcript of the hearing is filed, whichever is later, defendant may file a supplemental brief with this Court pertaining to the issues raised on remand.  Plaintiff may file a supplemental brief in response.

The Court retains jurisdiction.

/s/ Kathleen Jansen

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

July 5, 2018
Date

Chief Clerk