# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 14, 2016

Plaintiff-Appellee,

v

No. 323466
Wayne Circuit Court
LC No. 12-010594-FC

EDWARD RHONE,

Defendant-Appellant.

Before: SAAD, P.J., and WILDER and MURRAY, JJ.

PER CURIAM.

Defendant appeals his convictions after a jury trial of second-degree murder, MCL 750.317, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as an habitual offender, fourth offense, MCL 769.12, to prison terms of 60 to 90 years for the murder conviction and 2 to 90 years for the felon-in-possession conviction, to be served concurrently, but consecutive to a two-year term of imprisonment for the felony-firearm conviction. For the reasons provided below, we affirm.

The jury convicted defendant of fatally shooting 23-year-old Joshua Mejias outside of Club Venus, an adult entertainment club, on August 31, 2012. The principal issue at trial was identity. The prosecution presented evidence that after the club closed at 2:00 a.m., entertainers and patrons, including Mejias and his friend, Ryan Bullock, walked to the parking lot. The parking lot attendant had observed defendant and defendant's unidentified associate in the lot in a black Chrysler 300. At one point, defendant and a female club employee began to argue, and Mejias became involved. Ultimately, defendant obtained a firearm from his car and shot Mejias four times, including one close-range shot to the head, before driving away. Another club employee, who had observed defendant pull out a gun, called 911 and gave the license plate number for the black Chrysler, which was found to be registered to defendant. The defense theory at trial was misidentification. Defendant testified that he was at home caring for his severely disabled father at the time of the shooting.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was no credible evidence that he was the person who shot Mejias. When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and

determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). Circumstantial evidence and reasonable inferences arising from the evidence can constitute satisfactory proof of the elements of the crime. *People v Brantley*, 296 Mich App 546, 550; 823 NW2d 290 (2012). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury's verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Identity is an essential element in a criminal prosecution, *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976), and the prosecution must prove the identity of the defendant as the perpetrator of a charged offense beyond a reasonable doubt, *People v Kern*, 6 Mich App 406, 409; 149 NW2d 216 (1967). Positive identification by a witness or circumstantial evidence and reasonable inferences arising from it may be sufficient to support a conviction of a crime. *Nowack*, 462 Mich at 400; *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). The credibility of identification testimony is for the trier of fact to resolve, and this Court will not resolve it anew. *Davis*, 241 Mich App at 700.

Here, four eyewitnesses unequivocally identified defendant as the gunman. The evidence disclosed that Jeffrey Pitman and Chelsea Muglia both selected defendant from photographic lineups and identified him as the shooter at trial. Pitman, who came within four feet of defendant, face-to-face, was positive that defendant was the person who shot Mejias. Muglia explained that she would "never forget" defendant's face. Deanna Blackburn identified defendant in court as the person she saw pull out a long gun immediately before the shooting. Blackburn, who was 8 to 10 feet from defendant, testified that she "know[s] that face," "know[s] who she s[aw]," and "won't forget." Bullock identified defendant at the preliminary examination and at trial as the person he saw pointing a small rifle toward him and Mejias immediately before hearing several gunshots. These witnesses' testimony, if believed, was sufficient to establish defendant's identity as the shooter. See *id.* Apart from the positive and unequivocal identifications of defendant, the prosecution also presented evidence that the shooter was driving a black Chrysler 300, which was registered to defendant.

This evidence, viewed in a light most favorable to the prosecution, was sufficient to enable the jury to identify defendant as the perpetrator beyond a reasonable doubt. Defendant's challenges to the weight and credibility of the witnesses' identification testimony were matters for the jury to decide and do not affect the sufficiency of the evidence. *People v Scotts*, 80 Mich App 1, 9; 263 NW2d 272 (1977). The same challenges to the identification testimony that defendant raises on appeal were presented to the jury during trial. This Court will not interfere with the jury's role of determining issues of weight and credibility. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Rather, this Court is required to draw all reasonable inferences and make credibility choices in support of the jury's verdict. *Nowack*, 462 Mich at 400. Accordingly, there was sufficient evidence of defendant's identity.

## II. GREAT WEIGHT OF THE EVIDENCE

We reject defendant's argument that his convictions must be reversed because the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. A defendant is required to move for a new trial in the lower court to

preserve a claim that his conviction is against the great weight of the evidence. *People v Cameron*, 291 Mich App 599, 617-618; 806 NW2d 371 (2011). Because defendant did not move for a new trial below, our review of this unpreserved claim is limited to plain error affecting defendant's substantial rights. *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003).

In evaluating whether a verdict is against the great weight of the evidence, the question is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998); *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). As previously discussed, the eyewitness testimony and circumstantial evidence sufficiently established defendant's identity as the perpetrator. Considering that four witnesses positively identified defendant as the gunman, and two actually saw defendant shoot Mejias, and the evidence linked the shooter's vehicle to defendant, the evidence does not preponderate so heavily against the jury's verdict that it would be a miscarriage of justice to allow the verdict to stand. Contrary to what defendant suggests, conflicting testimony and questions regarding the credibility of witnesses are not sufficient grounds for granting a new trial. *Lemmon*, 456 Mich at 643. This Court defers to the jury's determination of credibility "unless it can be said that directly contradictory testimony was so far impeached that it 'was deprived of all probative value or that the jury could not believe it,' or contradicted indisputable physical facts or defied physical realities." *Id*. at 645-646 (citation omitted). That clearly is not the case here.

We disagree with defendant's argument that the jury was not justified in finding him guilty because Bullock's in-court identification was tainted by an impermissibly suggestive identification procedure. In a motion to suppress, defendant argued that Bullock's in-court identification was tainted because Bullock was shown a video of the shooting before the preliminary examination, where he first identified defendant. The trial court held an evidentiary hearing and denied defendant's request to set aside Bullock's identification. Defendant has not properly challenged the propriety of that ruling on appeal, and the record discloses that the trial court's decision to admit the identification evidence was not clearly erroneous. *People v Harris*, 261 Mich App 44, 51; 680 NW2d 17 (2004). Furthermore, the jury was aware that Bullock did not identify defendant in a photographic array and that he had observed the video, which was also shown to the jury. Again, it was up to the jury to determine whether Bullock's identification testimony was reliable and credible in light of the factors explored by the defense. *Lemmon*, 456 Mich at 643-644. Further, while defendant makes much of the trial court's denial of his motion to suppress Bullock's in-court identification, three other eyewitnesses provided positive and unequivocal identifications of defendant. The jury's verdict is not against the great weight of the evidence.

### III. SPEEDY TRIAL AND RIGHT TO PRESENT A DEFENSE

Defendant argues that he was denied his constitutional right to a speedy trial. The determination of whether a defendant was denied a speedy trial is a mixed question of fact and law. *People v Waclawski*, 286 Mich App 634, 664; 780 NW2d 321 (2009). The trial court's factual findings are reviewed for clear error, while the constitutional issue is a question of law subject to de novo review. *Id*.

Defendant alternatively argues that he was denied his right to present a defense when he was not allowed to present evidence that could have mitigated the prejudice he suffered as a result of the speedy trial violation. Although defense counsel asked defendant about his father's condition, to which the prosecutor successfully objected, defendant did not contend that such testimony was necessary to preserve his constitutional right to present a defense. Therefore, defendant's constitutional claim is not preserved, see *People v Danto*, 294 Mich App 596, 605; 822 NW2d 600 (2011) (stating that "an objection on one ground is insufficient to preserve an appellate argument based on a different ground"), and our review of that issue is limited to plain error affecting defendant's substantial rights, *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

## A. SPEEDY TRIAL

The United States and Michigan Constitutions guarantee criminal defendants the right to a speedy trial. US Const, Am VI; Const 1963, art 1, § 20; *People v Patton*, 285 Mich App 229, 235 n 4; 775 NW2d 610 (2009). "In determining whether a defendant has been denied a speedy trial, four factors must be balanced: (1) the length of the delay, (2) the reasons for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) prejudice to the defendant from the delay." *People v Mackle*, 241 Mich App 583, 602; 617 NW2d 339 (2000) (citations omitted). Here, the length of delay does not favor a finding of a speedy trial violation. The delay period commences at the arrest of the defendant. *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). Defendant was arrested on September 12, 2012, and trial began on February 10, 2014. When the length of the delay is less than 18 months, as is the case here, the defendant must establish that he was prejudiced by the delay. *People v Cain*, 238 Mich App 95, 112; 605 NW2d 28 (1999). Defendant's failure to do so precludes relief.

Prejudice to the defense must meaningfully impair a defendant's ability to defend against the charges against him in such a manner that the outcome of the proceeding will likely be affected. *People v Adams*, 232 Mich App 128, 134-135; 591 NW2d 44 (1998). Defendant argues that he lost a crucial "alibi witness" because of the delay when his father died before trial. While it is possible for the death of a potential witness to demonstrate the requisite prejudice if exculpatory evidence is lost, see *id.* at 136, defendant has not established that relevant evidence beneficial to the defense was lost by his father's absence. Given the record, there is no reason to believe that defendant's father could have given testimony at trial that would have exonerated him. In an affidavit, defendant averred that his father died in November 2013. As the trial court observed, defendant did not present his father's purportedly exculpatory testimony at the preliminary examination in November 2012, which was a year before his father's death. In addition, defendant did not list his father on the defense witness list filed before the original May 13, 2013, trial date (which was adjourned at defendant's request). These factors undermine defendant's assertion that his father was a crucial witness who could have provided material testimony. In sum, defendant's unsupported claim that his father's testimony might have exonerated him does not provide a sufficient basis to find actual and substantial prejudice. As a result, defendant's right to a speedy trial was not violated.

## B. RIGHT TO PRESENT A DEFENSE

Defendant argues that he was denied his right to present a defense when the trial court precluded him from testifying about his father's condition at the time of trial, i.e., that the father had died. Defendant claims that the jurors should have been informed that his father had died because they would otherwise be left in the dark why the father did not testify on defendant's behalf, when it was known to the jury that defendant's position was that he was at home, caring for his father at the time of the shooting.[1]

Although a defendant has a constitutional right to present a defense, US Const, Am VI; Const 1963, art 1 § 20; *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993), he must still comply with procedural and evidentiary rules established to assure fairness and reliability in the verdict. *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984); *People v Arenda*, 416 Mich 1, 8; 330 NW2d 814 (1982). The Michigan Rules of Evidence prohibits the admission of evidence that is not relevant. MRE 402. Thus, "[t]he right to present a defense extends only to *relevant* evidence." *Danto*, 294 Mich App at 604.

We hold that the information at issue—that defendant's father had died between the time of the shooting and the time of trial—was not a pertinent part of defendant's defense to the charges. His defense is that he was at home taking care of this father at the time of the shooting, and he conveyed this to the jury through his testimony. But what defendant ignores is that his father's status some months after the shooting had no bearing on his ability to present his defense to the jury. Put another way, whether defendant's father was alive or not at the time of trial had no impact on whether defendant's testimony that he was at home with the father at the time of the shooting was true.[2]

Moreover, even if the trial court's decision to exclude defendant's testimony could be construed as depriving defendant of the right to present a defense, under the plain error doctrine, defendant is not entitled to any relief. If defendant had been permitted to testify that his father was dead at the time of trial, and therefore unable to testify, there is not a reasonable probability that the jury would have returned a different verdict. Such information would have had no impact in the jury's deliberations in the face of the testimony from four eyewitnesses that identified defendant as the shooter and the fact that defendant's car was spotted at the scene. See *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006) (stating that "under the plain error

---

[1] Of course, defendant's position ignores the fact that, as previously discussed, even if the father were alive, there is no indication that he would have testified or that the testimony would have been helpful to defendant.

[2] We recognize that the specific issue before is very narrow. For instance, precluding the jury from hearing that the father had died months before trial started is a different matter than the court precluding the father from testifying at trial if he were still alive. Although in this latter instance, the testimony may have nonetheless been properly excluded if defendant violated any pretrial orders that required parties to supply the names of witnesses by a particular date. See MCR 6.201(J); *People v Davie (After Remand)*, 225 Mich App 592, 597-598; 571 NW2d 229 (1997).

rule, a defendant must show actual prejudice"). Accordingly, defendant has not established that he is entitled to a new trial.[3]

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant raises three claims of ineffective assistance of counsel, none of which has merit. Because no evidentiary hearing was held, our review is limited to mistakes apparent from the record. *People v Riley (After Remand)*, 468 Mich 135, 139; 659 NW2d 611 (2003). To establish ineffective assistance of counsel, defendant first must show that counsel's performance fell below an objective standard of reasonableness. In doing so, defendant must overcome the strong presumption that counsel's assistance was sound trial strategy. Second, defendant must show that, but for counsel's deficient performance, it is reasonably probable that the result of the proceeding would have been different. *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). Effective assistance of counsel is presumed and defendant bears a heavy burden of proving otherwise. *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994); *People v Effinger*, 212 Mich App 67, 69; 536 NW2d 809 (1995). "Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to 'affirmatively entertain the range of possible' reasons that counsel may have had for proceeding as he or she did." *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), vacated in part on other grounds 493 Mich 864 (2012). "[A] reviewing court must conclude that the act or omission of the defendant's defense counsel fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act or omission." *Id.* at 22-23.

Decisions about what arguments to make, what evidence to present, whether to call witnesses, and how to impeach witnesses are matters of trial strategy, *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999), and "this Court will not second-guess defense counsel's judgment on matters of trial strategy," *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011). Defense counsel has wide discretion regarding matters of trial strategy. *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). As hereafter discussed, defendant has not identified any omission that prejudiced his case.

## A. FAILURE TO CALL WITNESSES

Defendant contends that defense counsel should have called as witnesses (1) the defense investigator, who interviewed his now-deceased father, and (2) an orthopedic expert. As noted, defense counsel's decisions regarding whether to call witnesses are presumed to be matters of trial strategy, *Rockey*, 237 Mich App at 76, and the failure to present a witness can constitute

---

[3] Defendant also references that he was denied the right to present a defense when the trial court denied his motion for an adjournment when a witness of his was unable to testify. Defendant's failure to explain what the witness would have stated if she had testified results in the issue being abandoned. See *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004); *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

ineffective assistance only where it deprives the defendant of a substantial defense, *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). Although defendant asserts that the investigator would have testified that defendant's father would have supported defendant's alibi, defendant has not provided a witness affidavit from the investigator, or identified any other evidence of record establishing that the investigator actually would have testified at trial and provided favorable testimony. The record discloses that in the context of arguing another matter, defense counsel explained that the investigator attempted to interview defendant's father, but defendant's father was heavily medicated, "was very, very ill," and "could not speak." Counsel acknowledged that he did not know what the substance of defendant's father's testimony would have been had he lived to testify. Thus, it is clear that the investigator had not gained any helpful information, alibi or otherwise, from defendant's father that he could have offered on defendant's behalf. Because information in the record indicates that defendant's father was not able to speak to the investigator, defense counsel acknowledged that he did not know the substance of any testimony defendant's father could offer, and defendant has not presented any affidavit from the investigator or other appropriate offer of proof showing that the investigator could have provided any favorable information he received from defendant's father, defendant has not established that he was prejudiced by defense counsel's failure to call the proposed witness at trial.

With regard to calling an orthopedic expert, defendant also has not made an offer of proof regarding the substance of any favorable testimony an expert could have offered. A defendant cannot establish his claim of ineffective assistance of counsel using speculation that an expert would have testified favorably. *Payne*, 285 Mich App at 190. Moreover, defendant has failed to overcome the presumption that defense counsel's decision not to call an expert witness was reasonable trial strategy. *Id*. There is no evidence that an expert would have testified that, after defendant fractured his ankle in December 2011, and underwent surgery in January 2012, he was not able to walk without a limp or a cane on August 31, 2012. Defense counsel attempted to support this theory, to challenge the accuracy of the witnesses' identification testimony, through defendant's own testimony, by presenting defendant's medical records and a photograph of defendant's injured ankle, and having the jury observe defendant's surgical scar. Defendant has failed to show that defense counsel's strategy was objectively unreasonable or that he was prejudiced by the absence of an expert at trial. Further, absent an appropriate offer of proof regarding the substance of any testimony an orthopedic expert could have offered, defendant is unable to establish that he was prejudiced by the absence of an expert at trial.

## B. FAILURE TO "COMPLETE" THE IMPEACHMENT OF BULLOCK

Defendant contends that defense counsel should have "read [Bullock's] statement [from the preliminary examination] about meeting Detective Thomas at a restaurant into the record." The record discloses that defense counsel clearly elicited that Bullock previously testified that he did not remember meeting Detective Thomas at a restaurant. Defense counsel further elicited that, at the time of trial, Bullock still did not remember meeting the detective at a restaurant. Other than providing information that was adequately covered by counsel's questioning, defendant does not state how reading Bullock's prior testimony "into the record" would have further undermined Bullock's credibility, particularly where Bullock's trial testimony on this point was ultimately consistent with his prior testimony on direct examination. Defendant has

not shown that defense counsel's impeachment efforts were objectively unreasonable or prejudicial.

## C. FAILURE TO REQUEST A FINGERPRINT ANALYSIS

Defendant argues that defense counsel was ineffective for failing to request a fingerprint analysis for a nine-millimeter live round found in the street, near defendant's house. Defendant has failed to overcome the strong presumption of sound strategy. *Rockey*, 237 Mich App at 76. Defense counsel reasonably may have determined that any analysis would not have been helpful and only could have been harmful to the defense. The live round was of the same caliber as the casings found at the crime scene. Defense counsel actually used the lack of a fingerprint analysis to the advantage of the defense, without the risk of harmful test results. Counsel highlighted that no weapons or bullets were found inside defendant's house or car and elicited from a police witness that the live round found in the street did not have "anything to do with" this case. Because the live round was not deemed significant to defendant's case, which counsel established at trial, there was no reason to request a fingerprint analysis of the live round. If the live round had been analyzed and defendant's fingerprint was not found, that result would not have been helpful because of the lack of significance of that evidence to the charged offense. It was sufficient for defense counsel to simply establish that the live round was not deemed significant to defendant's case, which he did. Conversely, however, if the live round had been analyzed and defendant's fingerprint was found, that information would have been harmful to defendant because it would have shown defendant's access to ammunition of the type linked to the victim's shooting. In sum, there was no scenario where fingerprint testing was likely to benefit the defense. Instead, counsel elicited that the police did not send the live round for a fingerprint analysis, and, in closing argument, used their failure to analyze the live round to discredit the police investigation and to challenge the strength of the prosecution's case. Defendant has not shown that defense counsel's strategy was objectively unreasonable.

Affirmed.

/s/ Henry William Saad
/s/ Kurtis T. Wilder
/s/ Christopher M. Murray