# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MICHAEL EUGENE SWYGART,

Defendant-Appellant.

UNPUBLISHED
March 31, 2016

No. 323740
Wayne Circuit Court
LC No. 14-004648-FC

Before: RONAYNE KRAUSE, P.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

A jury convicted defendant of three counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(c), three counts of third-degree criminal sexual conduct (CSC III), MCL 750.520c(1)(b), and one count of kidnapping, MCL 750.349(1)(c). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 40 to 75 years each for the CSC I and kidnapping convictions, and 10 to 15 years for each CSC III conviction. Defendant appeals as of right, and we affirm.

## I. FACTS

Defendant's convictions arise from the March 2009 sexual assault and kidnapping of MW in Detroit. MW met defendant through a dating service. After the two talked on the telephone, MW invited defendant to her house. Defendant was very polite, and they planned to go out to dinner and then play putt-putt golf. Defendant drove MW and her three children to a babysitter's house, where MW dropped off the children. Defendant and MW thereafter left the babysitter's house in defendant's vehicle.

According to MW, while defendant was driving, his mood suddenly changed. He asked her if she had any money and, when MW denied having any money, defendant placed his hand down the front and back of her pants, made a hand gesture as if he intended to hit her, and told her that he would "beat [her] ass" if she was lying. Defendant thereafter drove around the city, briefly parked at an apartment complex, and then went to a grocery store where he unsuccessfully attempted to have MW withdraw money from an ATM. While at the grocery store, defendant instructed MW to remain close to him, as if they were a couple. MW testified that she did not attempt to escape or seek help at the apartment complex or grocery store because she was afraid of defendant.

-1-

After leaving the grocery store, defendant returned to MW's home and rushed her inside. Defendant made some telephone calls and then briefly used the bathroom. Again, MW explained that she did not leave because she was afraid of defendant. Defendant thereafter went to the children's bedroom and instructed MW to come with him. In the bedroom, defendant instructed MW to remove her clothing, hit her in her face with his hand, and directed her to perform oral sex or he "was gonna beat [her] ass." Defendant next instructed MW to lie down on her daughter's bed and he vaginally penetrated her for about 10 minutes. Defendant then took MW to her own bedroom where he vaginally penetrated her for another 10 minutes.

When defendant was finished assaulting MW, he washed up and told MW to get dressed. Defendant told MW that he was going to take her with him to Highland Park. Before they left, defendant had MW make him something to eat and drink, and then made her pose for some photographs with her pants pulled down. As MW was putting on her coat and getting ready to leave with defendant, he told her to take off her clothes because he intended to have sex with her again. Defendant held up his open hand as if to strike MW when someone knocked at the front door. MW ran to the door, opened it, and then ran out of the house without looking back. She ran to a nearby house, but did not tell the occupants that she had been sexually assaulted. After about an hour, she called a female friend and told her that she had been raped. After MW and her friend went back to MW's house and confirmed that defendant was not there, the two retrieved MW's children from the babysitter. MW thereafter called the dating service to inform the service of the incident. MW waited until the next day to report the sexual assault to the police. MW later gave the police items to test for DNA evidence, including her underpants and a glass that defendant had used while at the house.

DNA testing revealed that the drinking glass contained DNA from two contributors, one male. A sample from the underwear included a sperm fraction that was consistent with a male contributor. After the results were analyzed, they were uploaded to the Combined DNA Index System (CODIS) which returned a match to defendant's DNA.

At trial, the prosecution presented other acts testimony from two prior victims of the defendant pursuant to MRE 404(b)(1). ML testified that in early 2009 she spoke to defendant over a telephone dating service. ML agreed to meet defendant to consume alcohol and marijuana, and possibly have sex. After defendant arrived at ML's home, she got into defendant's vehicle. She became nervous because defendant locked the passenger door and neither the door nor the window could open from the inside. After driving around Detroit, defendant stopped near some houses and parked the vehicle. He got out, walked to the passenger side, opened the door, and told ML to get out. She complied because she was scared. Defendant told her to bend over, he pulled down her pants, and then he vaginally penetrated her. According to ML, defendant then drove to another location where he parked the vehicle and sexually assaulted her a second time. Defendant then took ML to a hotel and sexually assaulted her a third time.

Another witness, DC, met defendant outside her work in October 1994. About two weeks later, defendant called DC. The two spoke on the phone approximately three times between then and November 1, 1994, when defendant called DC to say that he was going to be in the area. DC allowed defendant to come to her house that afternoon. After defendant arrived, they talked for about an hour and his demeanor was "normal." While they were both sitting on

the couch, defendant grabbed DC's breast, which startled her. When she asked him what he was doing, he picked her up off the couch and restrained her by keeping a tight hold. DC kicked and screamed, but was not able to break away. Defendant told her, "Every time you scream I am gonna hit you." DC continued to scream loudly and defendant continued to hit her. Defendant then took DC into her son's bedroom and sexually assaulted her. DC's two-year-old son witnessed the offense and hit defendant with a plastic bat. Eventually, the assault concluded when Defendant ran out of the house.

## II. OTHER ACTS EVIDENCE

Defendant argues that the trial court erred in allowing the prosecution to introduce the other acts testimony of ML and DC. We review the trial court's decision to admit this evidence for an abuse of discretion, which occurs when the court's decision falls outside the range of reasonable and principled outcomes. *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013).

MRE 404(b)(1) prohibits evidence of a defendant's other bad acts to prove a defendant's character or propensity to commit the charged crime, but permits such evidence for a noncharacter purpose when that evidence is relevant to a material issue at trial and the probative value of the evidence is not substantially outweighed by its prejudicial effect. The logic behind the rule is that a jury must convict a defendant on the facts of the crime charged, not because the defendant is a bad person or has a propensity to commit criminal acts. *People v Crawford*, 458 Mich 376, 384; 582 NW2d 785 (1998). Evidence of other crimes, wrongs, or acts is admissible under MRE 404(b)(1) if the evidence is (1) offered for a proper purpose, i.e., not to prove the defendant's character or propensity to commit the crime, (2) relevant to an issue or fact of consequence at trial, and (3) sufficiently probative to outweigh the danger of unfair prejudice under MRE 403. *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). The trial court, upon request, may provide the jury with a limiting instruction for any evidence admitted under MRE 404(b)(1). *VanderVliet*, 444 Mich at 75.

The prosecution bears the initial burden of establishing the relevancy of the evidence to a permissible purpose under MRE 404(b)(1). *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). "Relevance is a relationship between the evidence and a material fact at issue that must be demonstrated by reasonable inferences that make a material fact at issue more probable or less probable than it would be without the evidence." *Id.*, quoting *Crawford*, 458 Mich at 387; MRE 401. Relevant evidence may be excluded under MRE 403 "if its probative value is substantially outweighed by the danger of unfair prejudice." *People v Sabin (After Remand)*, 463 Mich 43, 58; 614 NW2d 888 (2000). Unfair prejudice does not mean any prejudice, but refers to "the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Pickens*, 446 Mich 298, 337; 521 NW2d 797 (1994).

The prosecution offered the other acts evidence for the purpose of showing defendant's common plan, scheme, or system for sexually assaulting women. To establish the existence of a common design or plan, there must be sufficient common features to infer the existence of a plan rather than a series of similar spontaneous acts, but the plan revealed need not be distinctive or unusual. *Sabin (After Remand)*, 463 Mich at 65-66. The existence of differences between

charged and uncharged acts does not preclude the existence of a common plan, scheme, or system, as long as there are "sufficient common features to infer the existence of a common system used by the defendant in committing the acts." *Id.* at 67.

Defendant argues that the testimony of ML and DC was not relevant to show a plan, scheme, or system for perpetrating sexual assaults, and that the prosecution instead improperly used the evidence to show his propensity to commit the charged offense. We disagree. The charged and uncharged offenses all involved women with whom defendant had recently met and had pursued a dating relationship. In all three cases, defendant used that relationship to gain access to the woman and he initially presented a polite and friendly persona to gain her trust. Once he was successful in gaining that trust, he arranged to seclude each woman in an isolated location, away from others, or in the presence of only young children. Thereafter he suddenly changed his demeanor and became threatening, demanding, and controlling, causing each woman to fear for her safety. Defendant then sexually assaulted each woman. In all three cases, defendant set up the circumstances in a way that allowed him to raise consent as a defense. As the trial court noted, defendant's planning made it possible for him to argue that the women consented to any sexual activity because each woman invited defendant into her home. The circumstances involving all three encounters contain sufficient similarities to support an inference of a common plan or system of gaining access to women through a dating relationship and gaining their trust to enable him to be alone with them in a secluded and controlled environment before sexually assaulting them.

Defendant attempts to argue that distinctions between the incidents involving ML and DC and the charged offense involving MW rendered the other acts evidence inadmissible. While defendant is correct that there were some distinctions, there were sufficient common features to infer the existence of a common system. *Id*. Because MRE 404(b) is a rule of inclusion, rather than exclusion, these distinctions are not enough to show that the trial court abused its discretion in admitting ML's and DC's testimony. *People v Martzke*, 251 Mich App 282, 289; 651 NW2d 490 (2002).

Defendant argues that because the evidence showed that he had a "Dr. Jekyll/Mr. Hyde" personality, in which he could "flip" his behavior, it was therefore actually offered to show his character or propensity to commit crimes, as opposed to showing an intentional plan or scheme to commit crimes. We disagree. As we previously indicated, the fact that defendant initially presented a polite and friendly persona was a common factor in each case and allowed defendant to gain each woman's trust, which thereby enabled him to be alone with the woman in a controlled and isolated environment. This evidence was not offered to prove that defendant had a propensity to commit crimes; rather, this evidence was offered to show that defendant's use of this persona allowed him to gain each victim's trust, which, in turn, afforded him the opportunity to sexually assault each victim.

Defendant also argues that the trial court erred in ruling that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Again, we disagree. Defendant claims that the trial court improperly focused on the probative value of the evidence rather than making specific findings on the prejudicial effect of the evidence. MRE 403 applies to all relevant evidence, not simply "other acts" evidence. The trial court is required to balance the probative value of the relevant evidence against the danger of unfair prejudice; if

the danger of unfair prejudice substantially outweighs the evidence's probative value, the evidence may be excluded. *Id.* Defendant would apparently have the trial court list the possible ways in which the evidence could prejudice a defendant before determining that the probative value of such evidence is not substantially outweighed by this prejudice. We do not believe this necessary. In every presentation of MRE 404(b)(1) evidence the prejudicial effect is that the jury will determine that the defendant committed the charged offense based on his propensity to commit the other acts. Therefore, unless the defendant articulates or the evidence clearly presents an additional prejudicial effect beyond propensity, the trial court need not directly address the evidence's tendency to prove guilt via propensity. The trial court's inquiry may focus on the relevance of the evidence to the non-propensity purpose and still be proper. If the evidence is highly relevant to the non-propensity purpose, such that the ordinary prejudicial effect of the evidence does not substantially outweigh the non-propensity purpose, the trial court may properly admit the MRE 404(b) evidence.

In this case, the defense theory at trial was that defendant and MW engaged in consensual sex. MW admitted inviting defendant into her home and admitted voluntarily leaving with defendant for an apparent date. The other acts evidence was highly probative of whether, despite these circumstances, MW did not consent to sexual contact with defendant because the evidence tended to show defendant's common plan, scheme, or system for sexually assaulting women. Further, the judge found that the evidence's prejudicial effect could be alleviated by a limiting instruction to the jury. The trial court instructed the jury, at multiple times, on the limited, permissible use of the evidence, including that it was not to be used to show that defendant was a bad person or had a propensity to commit similar crimes. Accordingly, the trial court's instructions alleviated any potential for unfair prejudice. Since defendant offers no reason why this evidence should be excluded other than that the evidence had a tendency to prove guilt via propensity, we will not find that the trial court erred in determining the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

### III. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional issues in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order 2004-6, Standard 4, none of which have merit.

### A. PREARREST DELAY

Defendant argues that his constitutional right to a speedy trial was violated because he was not arrested and charged with this offense until five years after the offense occurred. While defendant frames this issue as one implicating his constitutional right to a speedy trial, the right to a speedy trial encompasses only delay between a defendant's arrest and the start of trial, which is not at issue here. *People v Patton*, 285 Mich App 229, 236; 775 NW2d 610 (2009). Defendant's argument is instead based on the period of delay between the commission of the offense and the filing of charges against defendant. A due process violation can result from a delay between the date of an offense and the defendant's arrest. However, because defendant did not raise the issue of prearrest delay in the trial court, that issue is unpreserved and our review is limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

There is no constitutional right to be arrested. Accordingly, a defendant's right to procedural due process is violated only if he was prejudiced by the prearrest delay. As explained in *Patton*, 285 Mich App at 237:

> "Before dismissal may be granted because of prearrest delay there must be actual and substantial prejudice to the defendant's right to a fair trial and an intent by the prosecution to gain a tactical advantage." *People v Crear*, 242 Mich App 158, 166; 618 NW2d 91 (2000), overruled in part on other grounds *People v Miller*, 482 Mich 540 (2008). Substantial prejudice is that which meaningfully impairs the defendant's ability to defend against the charge in such a manner that the outcome of the proceedings was likely affected. *People v Adams*, 232 Mich App 128, 135; 591 NW2d 44 (1998). " '[A]ctual and substantial' prejudice requires more than generalized allegations." *Id*. If a defendant demonstrates prejudice, the prosecution must then persuade the court that the reason for the delay sufficiently justified whatever prejudice resulted. *People v Cain*, 238 Mich App 95, 109; 605 NW2d 28 (1999).

Although there was more than a five-year delay between the time of the offense and defendant's arrest, because defendant did not raise this issue in the trial court, the record was never properly developed regarding the reasons for the delay. Without an evidentiary basis explaining the reasons for the delay, defendant cannot demonstrate "an intent by the prosecution to gain a tactical advantage." *Id*.

Defendant has also failed to adequately establish that the delay caused actual and substantial prejudice to his defense. To be substantial, the prejudice to the defendant must have meaningfully impaired his ability to defend against the charges such that the "outcome of the proceeding was likely affected." *Id*. Mere speculation about lost memories, witnesses, or evidence does not establish actual and substantial prejudice. *People v Woolfolk*, 304 Mich App 450, 454; 848 NW2d 169 (2014), aff'd 497 Mich 23 (2014). Defendant speculates that evidence might have been procured and makes no effort to explain how the loss of alleged evidence meaningfully impaired his defense. Accordingly, we reject this claim of error.

## B. PROSECUTORIAL MISCONDUCT

Although defendant raises the issue of prosecutorial misconduct in his statement of the issues presented, he does not address this issue in the body of his brief or otherwise identify the particular conduct he believes was improper. Failure to brief an issue on appeal results in its waiver. *People v Kean*, 204 Mich App 533, 536; 516 NW2d 128 (1994). Because defendant does not discuss this issue or identify the alleged misconduct, this issue is waived.

## C. SUFFICIENCY OF THE EVIDENCE

Defendant generally asserts that the prosecution failed to prove that he committed the charged offenses beyond a reasonable doubt. We review a challenge to the sufficiency of the evidence de novo, reviewing the evidence in a light most favorable to the prosecution to determine whether there was sufficient evidence to justify a rational trier of fact in finding the defendant guilty beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-514; 489

NW2d 748 (1992), amended 441 Mich 1201 (1992). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v John Williams*, *Jr*, 268 Mich App 416, 419; 707 NW2d 624 (2005). "[A]ny conflicts in the evidence must be resolved in favor of the prosecution." *People v Jackson*, 292 Mich App 583, 587-588; 808 NW2d 541 (2011).

Defendant seems to argue that the prosecution did not prove his identity as the assailant beyond a reasonable doubt. "[I]dentity is an element of every offense," *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008), and positive identification by a single witness may be sufficient to support a conviction. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). Further, the credibility of identification testimony is a question for the trier of fact to resolve and this Court will not resolve the identity issue anew. *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013); *Davis*, 241 Mich App at 700.

MW identified defendant as the person who kidnapped and sexually assaulted her and DNA evidence linked defendant to the offense. Indeed, the defense theory at trial was that MW voluntarily accompanied defendant on a date and that defendant and MW engaged in consensual sexual activity. The evidence was sufficient to establish defendant's identity beyond a reasonable doubt.

To the extent that defendant generally challenges the sufficiency of the evidence to prove the other elements of the offenses, his argument also lacks merit. Defendant was charged with kidnapping under MCL 750.349(1)(c), which prohibits a person from (1) knowingly restraining another person, (2) with the intent to engage in criminal sexual penetration or criminal sexual conduct. The term "restrain" means "to restrict a person's movements or to confine the person so as to interfere with that person's liberty without that person's consent or without legal authority. The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts." MCL 750.349(2). Defendant was charged with three counts of CSC 1 under MCL 750.520b(1)(c), which prohibits a person from (1) engaging in sexual penetration with another person, (2) under circumstances involving the commission of another felony. The other alleged felony in this case was kidnapping. Defendant was charged with three counts of CSC III under MCL 750.520d(1)(b), which prohibits a person from (1) engaging in sexual penetration with another person, and (2) force or coercion is used to accomplish the sexual penetration.

MW testified that after she voluntarily accompanied defendant in his vehicle, defendant "flipped" and his mood completely changed. He asked her for money and, when she denied having any, he placed his hands down the front and back of her pants, made a hand gesture as if to hit her, and threatened to "beat [her] ass." Thereafter, MW followed defendant's demands because she was afraid of him. At the grocery store, defendant instructed MW to stay close to him as if they were a couple. She said she complied with his instructions because she was scared. When they returned to MW's house, defendant rushed MW into the house. When defendant briefly left MW alone to go to the bathroom, MW did not try to leave because she was afraid. Defendant instructed MW to go to the children's bedroom, instructed her to remove her clothing, and smacked her in the face. Defendant then instructed MW to perform oral sex and threatened to "beat [her] ass" if she did not comply. Afterward, defendant vaginally penetrated

MW and told her he was going to "beat [her] ass" if she did not "stop whimpering." Defendant then led MW to her own bedroom where he vaginally penetrated her again.

MW's testimony was sufficient to enable the jury to find beyond a reasonable doubt that defendant restrained MW by confining her both inside his vehicle and at MW's house. MW repeatedly testified that defendant's conduct and threats prevented her from leaving defendant's vehicle, from seeking help at the grocery store, or even leaving her own home during the brief period that defendant used the bathroom. Accordingly, the jury could find that defendant's conduct and repeated threats of physical harm interfered with MW's liberty without her consent. The evidence of the sexual assaults also supported an inference that defendant knowingly restrained MW for the purpose of engaging in criminal sexual penetration. Thus, the evidence was sufficient to support defendant's kidnapping conviction.

MW also testified that defendant made her engage in oral sex and then twice penetrated her vaginally. The evidence showed that these acts occurred under circumstances involving the commission of another felony—kidnapping. Thus, the evidence supported defendant's convictions for three counts of CSC I. MW's testimony that defendant instructed her to remove her clothing, smacked her in the face, and then threatened to "beat [her] ass" if she did not perform oral sex supported an inference that defendant's acts of sexual penetration were accomplished by force or coercion. Accordingly, the evidence also supported defendant's CSC III convictions.

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that the attorney who represented him at his preliminary examination and one of his two trial attorneys were both ineffective. Because defendant failed to raise an ineffective assistance of counsel claim in the trial court, our review of this issue is limited to errors apparent from the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced defendant that he was denied the right to a fair trial. *Pickens*, 446 Mich at 338. Defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991). To establish prejudice, defendant must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Johnnie Johnson, Jr*, 451 Mich 115, 124; 545 NW2d 637 (1996). The burden is on defendant to establish factual support for his claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant presents a "laundry list" of general complaints relating to his two attorneys; however, he fails to provide sufficient detail to adequately review his complaints. He complains that his attorneys failed to investigate his case, yet does not explain what additional investigation counsel should have pursued. He complains that his attorneys failed to present a valid defense or make proper arguments, yet does not identify any particular defense he believes counsel should have pursued, or explain what additional arguments counsel should have made other than claiming counsel should have argued the issue of defendant's identification as the assailant. To the extent defendant argues that his attorneys were ineffective for failing to argue the issue of defendant's identification, failure to argue that issue was not objectively unreasonable where the

defense theory at trial was that defendant and MW engaged in consensual sex. Similarly, he generally faults his attorneys for not calling witnesses or presenting evidence. Other than naming Lotonya Brown, he does not identify any additional witnesses whom he believes should have been called. Further, defendant does not explain what testimony Brown could have provided or what additional evidence counsel should have elicited from these additional witnesses or otherwise presented.

Defendant complains that his attorneys failed to object to the prosecution withholding exculpatory evidence, yet does not identify any evidence that was withheld. He contends that his attorneys were ineffective for failing to challenge the DNA evidence, yet does not identify any legal basis for challenging that evidence. Defendant complains that his attorneys did not impeach witnesses with prior inconsistent testimony or statements, but he does not indicate what inconsistent statements or testimony could have been used for impeachment. He complains that his attorneys were ineffective for failing to object to the prosecutor's remarks, yet does not indicate what remarks by the prosecutor were improper. Defendant contends that his attorneys were ineffective for failing to raise a speedy trial claim, however, he has not established that any such claim was meritorious. Further, there is no factual support for defendant's claims (1) that MW's husband was present during the offense, (2) that MW had a drug history, and even if so, that this history would have been admissible at trial, (3) that another suspect, DeShawn Folds, was linked to this case, or (4) that a juror was excusable for cause or that counsel's decision not to remove the juror with a peremptorily challenge was objectively unreasonable.

Defendant cannot simply announce a position and leave it to this Court to "discover and rationalize the basis for his claims." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). Furthermore, apart from merely presenting lists of alleged errors, defendant completely fails to show any prejudice resulting from these alleged errors. Accordingly, defendant has not established that he was denied the effective assistance of counsel.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Kathleen Jansen
/s/ Cynthia Diane Stephens