*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 14, 2021

Plaintiff-Appellee,

v

No. 349524
Wayne Circuit Court
LC No. 18-009401-01-FC

WILLIE LAMONT-CLAUD WASHINGTON,

Defendant-Appellant.

Before: LETICA, P.J., and GLEICHER and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of eight counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b. Defendant was sentenced, as a second-offense habitual offender, MCL 769.10, to 480 to 960 months' imprisonment for each count. We affirm defendant's convictions, but remand for the trial court to either articulate its reasons for the departure sentence and the extent of the departure, or resentence defendant.

## I. BACKGROUND

This case arises out of defendant's repeated sexual assault of his daughter, KW, between 2003 and 2006. The assaults began when KW was 13 years old. The first incident occurred while KW was sleeping on a couch in the living room of the home she shared with defendant and her mother, DO. KW woke up to defendant kneeling at the foot of the couch she was sleeping on, and defendant then slid his hand up KW's leg and inserted his fingers into her vagina. Two other children were asleep in the room at the time.

At some point after this incident, defendant beat KW and broke her ankle. KW's gym teacher noticed the bruises on KW's body and ankle, and asked KW what happened. KW was brought to her school's guidance counselor and disclosed to the counselor that defendant sexually assaulted and physically abused her. KW was removed from defendant's home and placed into foster care sometime in 2003.

While KW was in foster care, her mother, DO, married defendant. KW testified that she saw photographs of the wedding while she was in foster care and was concerned for DO's safety

because DO was badly bruised and looked "extremely small." KW subsequently recanted her allegations against defendant and was returned to the care of defendant and DO at the end of summer 2004.

The night that KW returned home from foster care, defendant sexually assaulted her. While KW was lying in her bed, defendant entered her bedroom, sat down on the end of KW's bed, and rubbed KW's feet. KW moved her feet away from defendant, but defendant removed the blanket that was covering KW, inserted his fingers into KW's vagina, and placed his mouth on her vagina. The next incident occurred soon thereafter while DO was out of town. Defendant was upset that KW did not want to be alone with him and called KW out of her bedroom. Defendant told KW to lie down on the couch, then proceeded to put his mouth on KW's vagina and penetrate KW's vagina with his penis. KW testified that several other sexual assaults occurred while DO was out of town, including one in which defendant tied KW to a pole in the basement with a leash. After DO returned home, defendant sexually assaulted KW again after she smashed defendant's television.

The final sexual assault occurred in 2006. Defendant entered KW's bedroom while she was lying on the floor, pulled down her pajama pants and underwear, held her hands above her head, and vaginally penetrated her and ejaculated on her face and chest. When defendant left, KW went to the bathroom, wiped defendant's ejaculate off with tissues, put the tissues in a plastic bag, and walked to her boyfriend's home. Once at her boyfriend's home, KW told his family what happened and asked to be taken to the hospital. KW was brought to St. John Hospital, and a sexual assault kit was performed. The sexual assault kit was entered into the property room of the Detroit Police Department in 2006, and remained there untested until 2013. In 2013, KW's sexual assault kit was tested for DNA, but the DNA did not match any DNA in the the Combined DNA Index System. Detective Janet Sise, a cold case detective with the sexual assault kit task force, was assigned to this case at the end of December 2016, and defendant was identified as a suspect thereafter. Detective Sise obtained a buccal swab from defendant, and it was determined that defendant's DNA matched the DNA collected from KW's sexual assault kit in February 2018. Defendant was thereafter arrested, charged, and convicted as stated above. This appeal followed.

## II. PREARREST DELAY

Defendant argues that the trial court erred by denying his motion to dismiss because the 15-year delay in charging him denied him of his right to a fair trial. We disagree.

While a trial court's ruling on a motion to dismiss is reviewed for an abuse of discretion, the underlying question on appeal is whether a delay in charging defendant violated his right to due process, which is a question of law reviewed de novo. *People v Scott*, 324 Mich App 459, 462; 924 NW2d 252 (2018).

A "[m]ere delay between the time of the commission of an offense and arrest is not a denial of due process." *People v Patton*, 285 Mich App 229, 237; 775 NW2d 610 (2009). For a prearrest delay to violate due process, the defendant must demonstrate that he or she was prejudiced by the delay. *People v Adams*, 232 Mich App 128, 134; 591 NW2d 44 (1998). To demonstrate prejudice, the defendant must present evidence of "actual and substantial prejudice to his right to a fair trial." *Scott*, 324 Mich App at 462 (quotation marks and citations omitted). "Actual prejudice cannot be

shown by mere speculation; that is, a defendant cannot merely speculate generally that any delay resulted in lost memories, witnesses, and evidence, even if the delay was an especially long one." *Id.* (quotation marks and citations omitted). Substantial prejudice means that the delay impaired the defendant's ability to defend against the charges in such a manner that the outcome of the proceeding was likely affected. *Id.*

Before trial, defendant argued that he was he was prejudiced by the 15-year delay between when KW accused him of sexual assault and when he was arrested because he was now unable to call as witnesses both his father and KW's cousin, TD, who was in the room asleep during the first alleged assault. Defendant also argued generally that the available witnesses' memories had likely deteriorated. After considering the parties arguments, the trial court concluded that defendant was not prejudiced by the prearrest delay because the proposed testimony of his father and TD was speculative, and it was unclear whether their testimony would have been beneficial to defendant or affected the outcome of trial. Additionally, the trial court noted that general allegations that the memories of the available witnesses had likely deteriorated was insufficient to establish actual and substantial prejudice.

On appeal, defendant continues to argue that he suffered actual and substantial prejudice because his ability to call witnesses and obtain records were compromised by the delay. Defendant, however, does not identify on appeal which witnesses he was unable to call or which records he was unable to obtain. Defendant carries the burden of demonstrating prejudice, *Adams*, 232 Mich App at 134, and mere speculation or general allegations that the delay may have resulted in prejudice is not sufficient to satisfy that burden, *People v Woolfolk*, 304 Mich App 450, 454; 848 NW2d 169 (2014).[1] Accordingly, defendant has failed to demonstrate that he suffered actual and substantial prejudice as a result of the prearrest delay on the basis of the speculative possibility that he may have been able to call unidentified witnesses or obtain unidentified records had there not been a 15-year delay in charging him.

## III. OTHER-ACTS EVIDENCE

Defendant next contests the trial court's decision to permit the prosecution to offer as other-acts evidence (1) the testimony of defendant's other daughter, AJ, that defendant sexually assaulted her in 2006, and (2) testimony that defendant committed acts of domestic violence against DO. Defendant contends that the trial court abused its discretion by allowing this evidence because the evidence was not relevant and was unduly prejudicial. We disagree.

This Court reviews for an abuse of discretion a trial court's decision to admit or exclude evidence. *People v Solloway*, 316 Mich App 174, 191-192; 891 NW2d 255 (2016). "An abuse of discretion is found when the trial court's decision falls outside the range of reasonable and principled outcomes." *Id.*

---

[1] Even assuming that the witnesses that defendant is referring to are the same ones that he referred to in the trial court—TD and his father—defendant does not provide any details of their possible testimony, and therefore fails to demonstrate that he was prejudiced by his inability to call them.

## A. 2006 SEXUAL ASSAULT

Generally, MRE 404(b)(1) precludes the prosecution in criminal trials from introducing "evidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." However, when a defendant is charged with a sexual offense against a minor, MCL 768.27a applies, and that statute supersedes MRE 404(b). *People v Watkins*, 491 Mich 450, 476-477; 818 NW2d 296 (2012). MCL 768.27a(1) provides, in relevant part, that if a "defendant is accused of committing a listed offense against a minor"—which includes sexual misconduct, see MCL 768.27(2)(a) and MCL 28.722—then "evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." In effect then, when a defendant is charged with a sexual offense against a minor, MCL 768.27a allows the admission of other-acts evidence "for its bearing on any matter to which it is relevant," including evidence that would be otherwise inadmissible under MRE 404(b). *Watkins*, 491 Mich at 471-472.

Importantly, however, MCL 768.27a remains subject to MRE 403. *Watkins*, 491 Mich at 455-456. MRE 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." To determine whether other-acts evidence admissible pursuant to MCL 768.27a should be excluded under MRE 403, the trial court may consider the following nonexhaustive list of factors:

> (1) [T]he dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Watkins*, 491 Mich at 487-488.]

The propensity inference of other-acts evidence admissible pursuant to MCL 768.27a is to be weighed "in favor of the evidence's probative value rather than its prejudicial effect." *Id*. at 487. This means that the "other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial because it allows a propensity inference." *Id*.

When opposing the prosecution's notice of intent to introduce other-acts evidence in the trial court, defendant argued that the evidence was not relevant and was being offered for improper propensity purposes. Defendant failed to consider any of the factors to determine whether other-acts evidence was inadmissible under MCL 768.27a. Accordingly, the trial court concluded that defendant's alleged other-acts of sexual assault against minors was admissible because the evidence was relevant and could be admitted for propensity purposes.

On appeal, defendant again argues that the evidence was inadmissible propensity evidence barred by MRE 404(b). However, as the trial court recognized, this argument is unpersuasive given that MCL 768.27a supersedes MRE 404(b) under the circumstances in this case, and that statute permits the admission of propensity evidence that would otherwise be inadmissible under MRE 404(b). See *Watkins*, 491 Mich at 476-477.

Unlike in the trial court, however, defendant on appeal also argues that evidence that he sexually assaulted AJ in 2006 should have been excluded under MRE 403 because its probative value was substantially outweighed by the risk of unfair prejudice. We disagree.

First, the record supports that defendant's sexual assault of AJ was similar to his sexual assaults of KW. Defendant was in a position of authority over both girls—he was each girl's father. Defendant assaulted each girl at his home, other people were in the home at the time, and defendant got each girl alone before sexually assaulting them. Lastly, both KW and AJ were minors at the time of the assault. The substantial similarities between the other act (defendant's sexual assault of AJ) and the charged crimes (defendant's sexual assaults of KW) weighed in favor of admission.

The temporal proximity of the other act and the charged crimes likewise weighed in favor of admission. The evidence demonstrated that defendant repeatedly sexually assaulted KW between 2003 and 2006. Defendant allegedly sexually assaulted AJ in 2006. Thus, while the act against AJ may have been isolated, defendant was sexually assaulting two of his daughters in the same time frame.

Next, the infrequency of the other act weighed neither for nor against its admission. Though the evidence demonstrated that defendant sexually assaulted KW repeatedly and AJ testified to a single assault, AJ also testified that after defendant sexually assaulted her, she ensured that she was never alone with defendant again, and, unlike KW, AJ did not live with defendant. Accordingly, defendant did not have additional opportunities to assault AJ like he did with KW.

Similarly, the presence of intervening acts weighed neither for nor against admission because neither party points to any intervening acts and this factor seems otherwise inapplicable to the facts of this case.

In contrast, the reliability of evidence supporting the occurrence of the other act weighed in favor of admission. While defendant denied sexually assaulting AJ or anyone else, AJ testified that she informed her guidance counselor about the incident and, thereafter, spoke to two detectives or social workers about the incident, though no investigation ensued. Moreover, Detective Sise testified that during the course of her investigation, she learned that defendant allegedly sexually assaulted AJ, which further supports that the other-acts evidence was reliable.

Lastly, the need for the other-acts evidence weighed in favor of admissibility. The only charge against defendant that was supported by DNA evidence was the CSC-I for the 2006 assault in KW's bedroom. All of the other charges against defendant were based on KW's credibility, which was assailable given that she recanted an allegation against defendant in 2004. AJ's testimony bolstered KW's testimony and demonstrated that defendant had a propensity to commit acts of criminal sexual conduct against minors whom he had a close relationship with. Thus, AJ's testimony was arguably needed in this case, which weighed in favor of its admissibility.

In sum, when weighing the factors outlined in *Watkins*, 491 Mich at 487-488, it is clear that the probative value of the evidence that defendant allegedly sexually assaulted AJ in 2006 was not substantially outweighed by the danger of unfair prejudice. Accordingly, the evidence should

not have been precluded under MRE 403, and the trial court did not abuse its discretion by admitting the evidence.

## B. ACTS OF DOMESTIC VIOLENCE

Defendant also argues that the trial court erred by allowing the prosecution to introduce evidence that he committed acts of domestic violence against DO. We disagree.

MCL 768.27b(1) governs the admissibility of other acts of domestic violence or sexual assault and provides that "in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under [MRE 403]." Like MCL 768.27a, MCL 768.27b grants a trial court the discretion to admit relevant evidence of other domestic assaults to prove any issue, even the character of the accused that would otherwise be excluded by MRE 404(b). *People v Pattison*, 276 Mich App 613, 615-616; 741 NW2d 558 (2007). But also like MCL 768.27a, evidence sought to be admitted under MCL 768.27b must "meet[] the standard of MRE 403." *People v Cameron*, 291 Mich App 599, 609; 806 NW2d 371 (2011).

When considering the admissibility of defendant's other acts of domestic violence, the trial court concluded that any acts of domestic violence that KW witnessed or that were alleged by KW were admissible. Defendant correctly points out on appeal that the evidence that defendant physically and verbally abused DO in the presence of KW was separate from any of his CSC charges, but is incorrect in his apparent assertion that this made the evidence irrelevant. As this Court has explained, evidence of past acts of domestic violence is generally relevant because "a full and complete picture of a defendant's history will tend to shed light on the likelihood that a given crime was committed." *Pattison*, 276 Mich App at 620. Defendant's act of domestic violence against DO was not only relevant to demonstrate defendant's propensity for using physical violence against family members; it also bolstered KW's testimony that defendant hit her and DO, and provided context for why KW wanted to return home after foster care to help DO. It also relatedly provided an explanation for why KW initially recanted the 2003 accusation that defendant sexually assaulted her, why she did not readily disclose that defendant was sexually assaulting her, and why DO failed to take any action after KW informed DO that defendant sexually assaulted her. This is all to say that, contrary to defendant's assertions, the evidence of defendant's acts of domestic violence against DO was highly relevant and probative.

This evidence could only be excluded under MRE 403 if its high probative value was substantially outweighed by the danger of unfair prejudice. Defendant does not explain why this evidence was *unfairly* prejudicial. As this Court has explained, "All relevant evidence is prejudicial; it is only unfairly prejudicial evidence that should be excluded." *People v McGhee*, 268 Mich App 600, 613-614; 709 NW2d 595 (2005). Defendant appears to focus only on the fact that the evidence was prejudicial, and consequently fails to explain how it was unfairly so.[2] This,

---

[2] Defendant at one point seems to contend that the other-acts evidence was unfairly prejudicial because "the other acts overshadowed the actual incident[.]" While we do not seek to minimize

in combination with the evidence's high probative value, leads us to conclude that the trial court correctly determined that the evidence should not be excluded by MRE 403 and was therefore admissible at defendant's trial.

## IV. PROSECUTORIAL MISCONDUCT

Defendant next argues that he was denied a fair trial when the prosecutor elicited testimony from AJ about defendant's convictions in Macomb County, and that the trial court abused its discretion when it denied defendant's ensuing motion for a mistrial. We disagree.

This Court reviews de novo claims of prosecutorial misconduct[3] to determine whether the identified conduct deprived the defendant of a fair trial. *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013). This Court reviews for an abuse of discretion a trial court's denial of a motion for a mistrial. *People v Dickinson*, 321 Mich App 1, 18; 909 NW2d 24 (2017).

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). A defendant's right to a fair trial may be jeopardized if the prosecutor interjects issues broader than the defendant's guilt or innocence. *Id*. at 63-64. "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id*. at 64.

"A trial court should only grant a motion for a mistrial when an error prejudices the defendant and affects his ability to get a fair trial." *Dickinson*, 321 Mich App at 18 (quotation marks and citations omitted). The party moving for a mistrial "must establish that the error complained of is so egregious that the prejudicial effect can be removed in no other way." *Id*.

On cross-examination, defense counsel asked AJ if she provided CPS or law enforcement a written statement after defendant sexually assaulted her in 2006, and AJ responded that she did not provide a written statement to law enforcement "until this—this started." On redirect examination, the prosecutor asked AJ what she meant by "until this started," to which AJ responded that she meant that she did not give a written statement until this case started and that she gave the statement because "I had to—I was helpin' someone else. I wanted to get my story out and testify to toughen up the other child who—." At that point, defense counsel interrupted AJ and objected to her testimony, requesting that the testimony about "the other child" be struck from the record. The jury was removed from the courtroom and the trial court asked what AJ was talking about and who "the other child" was. After determining that AJ was referencing a victim

---

the abuse that DO suffered at the hands of defendant, defendant was accused of sexually assaulting his daughter repeatedly. We cannot agree that allegations that defendant abused DO "overshadowed" the allegations that defendant repeatedly raped his daughter.

[3] This Court explained in *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015), that a fairer label for most claims of prosecutorial misconduct would be "prosecutorial error," while only the most extreme cases rise to the level of "prosecutorial misconduct." However, this opinion uses the phrase "prosecutorial misconduct" because it has become a term of art.

from a Macomb County case involving defendant and then discussing whether evidence of that case was admissible, the trial court concluded that regardless of whether evidence of the Macomb County case was admissible, no clear or understandable reference to the Macomb County case had been made in front of the jury. The court noted that if it did not know who AJ was referring to when she said "the other child" and did not know about the Macomb County case at this point in the trial, the jury also would not have known that AJ was referencing the Macomb County case when she mentioned "the other child."

Thereafter, defense counsel moved for a mistrial, arguing that AJ's reference to the Macomb County case was inadmissible evidence. The prosecution opposed the motion and argued that evidence of the Macomb County case was deemed admissible prior to trial. The trial court denied defendant's motion for a mistrial.

The trial court did not err by denying defendant's motion for a mistrial, and the prosecutor did not commit misconduct, because an unresponsive answer to a proper question is generally not grounds for granting a new trial. See *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995) (explaining that an unresponsive answer is generally not grounds for a mistrial). See also *People v Jackson*, 313 Mich App 409, 427; 884 NW2d 297 (2015) ("Unresponsive answers from witnesses are generally not prosecutorial error."). When the prosecutor inquired what AJ meant by her testimony that she did not provide a written statement "until this started," the prosecutor did not elicit AJ's testimony about why she decided to give a police statement. Moreover, when AJ made the statement, no evidence had been presented to the jury about the Macomb County case, and it was otherwise unclear what AJ meant by her reference to "the other child." Defendant contends that AJ's reference to "the other child" portrayed defendant as "a serial child molester" and conveyed to the jury that defendant was "a threat to all children everywhere." Yet AJ's contested statement referring to "the other child," standing alone, does not portray defendant as a serial child molester. And such a conclusion becomes even more tenuous when AJ's contested statement is taken in context. AJ testified that she wanted to help "someone else" and "tough up the other child." Both statements were too vague for the jury to draw any conclusion about who AJ was referring to, much less to infer that AJ was referring to a then-unknown-to-the-jury case from Macomb County. Moreover, the jury knew that defendant was on trial for sexually assaulting "someone else," his "other child" KW, so AJ's testimony that defendant sexually assaulted someone other than AJ did not interject any issue broader than what was already before the jury. Of course, AJ was not referring to KW but was indeed referring to a different child involved in a Macomb County case, but for the reasons already explained, we agree with the trial court the jury could not have inferred from AJ's limited testimony that she was referring to a different case out of Macomb County.[4] Because AJ's testimony did not deprive defendant of a fair trial, the

---

[4] Moreover, even if the jury did understand AJ's testimony as referring to the Macomb County case, Detective Sise later testified about the Macomb County case and a certified copy of defendant's convictions in Macomb County were admitted into evidence. Defendant does not argue that the admission of this evidence was improper, so assuming that the jury understood AJ's statement as referring to a child from the Macomb County case, any error was harmless.

prosecutor did not commit prosecutorial misconduct, and the trial court did not abuse its discretion by denying defendant's request for a new trial.

## V. SENTENCING

Lastly, defendant argues that he is entitled to resentencing because the trial court did not articulate sufficient reasons for defendant's departure sentence or the extent of the departure. We agree.

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). The relevant inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). The principle of proportionality requires that the defendant's sentence be "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Lampe*, 327 Mich App 104, 125; 933 NW2d 314 (2019) (quotation marks and citation omitted). When the trial court imposes a sentence outside of the applicable sentencing guidelines range, it must justify the sentence imposed to facilitate appellate review, which includes an explanation of how the departure, and the extent of the departure, is more proportionate to the offense and the offender than a different sentence would have been. *People v Smith*, 482 Mich 292, 311; 754 NW2d 284 (2008).

Defendant's recommended minimum sentencing guidelines range was 171 to 356 months' imprisonment. The trial court sentenced defendant to 480 to 960 months' imprisonment for each count of CSC-I, exceeding the guidelines range by 124 months. When the court issued this sentence, it stated only, "I will depart from the guidelines in an upward fashion due to the continuous heinous nature of the crime and find as the prosecutor urges that [defendant] is incapable of controlling his criminal disposition in society." While the trial court recognized that its sentence departed from the sentencing guidelines, it failed to articulate how the sentence it imposed was more proportionate to the offense and the offender than a different sentence would have been. Relatedly, the court failed to articulate how the *extent* of the departure was more proportionate to the defendant and his offenses than a different sentence would have been. The trial court's generalized statements about defendant and his crime, without more, were insufficient to justify its 124-month departure sentence. "A sentence cannot be upheld when the connection between the reasons given for departure and the extent of the departure are unclear." *Id*. at 304. On remand, the trial court must either articulate its reasons for the departure sentences and the extent of the departure sentences, or resentence defendant.[5]

---

[5] On appeal, the prosecution argues that defendant's sentences should be affirmed for reasons not specified by the trial court. It would be inappropriate, however, for this Court to affirm for reasons not specified by the trial court because "an appellate court should avoid supplementing or otherwise justifying the trial court's otherwise insufficient reasoning with reasoning of its own." *People v Dixon-Bey*, 321 Mich App 490, 531; 909 NW2d 458 (2017). The appropriate remedy is to allow the trial court the opportunity to explain its sentence in the first instance.

Defendant's convictions are affirmed, but we remand for the trial court to either articulate its reasons for the departure sentences and the extent of the departure sentences, or to resentence defendant. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Elizabeth L. Gleicher
/s/ Colleen A. O'Brien